13 July 1999

No. 1-98-3277WC

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

INDUSTRIAL COMMISSION DIVISION

BENNETT AUTO REBUILDERS, ) Appeal from the Circuit,  

) Court of Cook County, Illinois Appellant, )

v. ) No. 96 L 051034

)

THE INDUSTRIAL COMMISSION 
et
 ) H
onorable

   
al.
, (Douglas C. Siegele, ) Joanne L. Lanigan

Appellee.) ) Judge Presiding

_________________________________________________________________

JUSTICE HOLDRIDGE delivered the Opinion of the court:

_________________________________________________________________

Claimant, Douglas C. Siegele, filed a claim pursuant to the Illinois Workers' Compensation Act (the Act) (820 ILCS 305/1 
et
 
seq.
) (West 1996)) seeking compensation for a low back injury he sustained on October 12, 1993, while employed by Bennett Auto Rebuilders (the employer).

The arbitrator found that claimant sustained accidental injuries, which arose out of and within the course of his employment, and which were causally connected to his October 12, 1993, accident.  The arbitrator awarded claimant temporary total disability (TTD) benefits, medical expenses, and denied his request for penalties.  Pursuant to section 8(a) of the Act (820 ILCS 305/8(a) (West 1996)), the arbitrator ordered the employer to provide written authorization for claimant to undergo a surgical procedure prescribed by orthopaedist Dr. George Miz.

The Illinois Industrial Commission (the Commission) affirmed and adopted the arbitrator's decision.  The circuit court of Cook County confirmed the Commission's decision.

On October 12, 1993, while claimant performed a front end alignment on a vehicle for the employer, he felt a snap in his low back.  He immediately experienced pain throughout his left side, mainly in the area of his left groin and low back.  He sought emergency room treatment at St. Francis Hospital (St. Francis) in Blue Island, Illinois.  He was given pain medication and advised to see a physician if his pain did not subside.

Thereafter, claimant began a course of treatment with Dr. Roy Lacey through March 9, 1994.  Although he underwent physical therapy, it failed to either improve or alleviate his pain.  An MRI of his low back revealed disc degeneration at L5-S1; small left foramina disc herniations at L3-L4 and L4-L5; and moderate left paracentral disc herniation at L5-S1.

In December 1993, Dr. Lacey referred claimant to general surgeon Dr. Kenneth Anderson, who diagnosed him with a pulled groin muscle and found no evidence of a hernia.  On December 11, 1993, Dr. Lacey released claimant to return to work with the light-duty restrictions of lifting no more than 20 pounds and no prolonged standing or bending until his return appointment on December 27, 1993.

In February 1994, Dr. Lacey referred claimant to neurologist Dr. Soo In Lee.  Although Dr. Soo In Lee's exam of claimant produced normal and unremarkable results, he did find pain distribution into the L2 area of claimant's left side, and he recommended physical therapy.

Also in February 1994, and at the employer's request, claimant was examined by orthopedic surgeon Dr. Sid John Shafer.  Dr. Shafer examined claimant again on August 1, 1994, and on June 5, 1995.  He concluded that claimant suffered a left groin strain, and was fit to return to work without the need for any additional medical treatment or surgery.

In April 1994, claimant was seen by Dr. Miz.  Claimant underwent additional physical therapy with no improvement.  In July 1994, claimant underwent a CT scan and myelogram that confirmed his previous MRI findings, and Dr. Miz diagnosed him with significant herniations in his low back at L5-S1 and L3-L4.  Dr. Miz prescribed a surgical lumbar microdiscectomy to both of claimant's affected levels in his low back.  The employer refused to authorize such surgical procedure, and claimant has not been released to return to work.

Claimant attempted to return to light-duty work in August 1994.  On August 4, 1994, claimant maintains that the employer sent him home, as there was no work available.  On August 5, 1994, claimant again reported to work and was told by the employer's president, Michael McCann (McCann) that documentation would be necessary before he would be allowed to return to work.

McCann testified that on August 5, 1994, claimant reported to work without any tools; said that he did not know why he was there; and indicated that he could not perform any work.  McCann stated that he had light-duty work available, and that he would have assigned someone to do any necessary lifting for claimant. McCann testified further that he was unaware of the name of claimant's treating physician, his physical restrictions, the fact that he was taking medication, and the fact that surgery was recommended as the only means to alleviate his pain.

The employer offered surveillance videotape evidence wherein Alan Brooks (Brooks) recorded claimant on August 23, 1994, and September 21, 1994.  Brooks acknowledged that he was not a physician; could not tell if claimant was in pain or on pain medication; and was unaware of any restrictions claimant might have been under at the time the videotape was made.  The arbitrator viewed 15-20 minutes of the 12 hour video tape, which showed claimant reaching down and picking up a small, hollow sheet metal tube for approximately two seconds.  Claimant was not shown performing any strenuous activities.

Claimant testified that he had not previously suffered any low back injury, nor had he suffered any injury since his October 12, 1993, accident.  He denied any lifting since October 12, 1993, with the exception of lifting paint cans and using tools and welding equipment.  He also denied moving building materials such as bricks, wood, or sheet metal.  He has trouble walking, standing, and sitting for long periods of time.

The arbitrator found claimant's testimony credible.  The arbitrator adopted the opinions and conclusions of Dr. Miz, and found that Dr. Shafer, in an attempt to categorize claimant's condition as a simple back strain or groin pull, ignored evidence of claimant's herniated discs.  The arbitrator concluded that claimant sustained accidental injuries, which arose out of and within the course of his employment, and which were causally connected to his October 12, 1993, accident.  The arbitrator awarded claimant $298.67 per week for 83 1/7 weeks in TTD benefits, $330 in medical expenses, and denied claimant's request for penalties.

   The arbitrator determined that the employer failed to produce any credible evidence as to why Dr. Miz's recommended surgical procedure should not be authorized.  The arbitrator found such surgical procedure reasonable and necessary.  As a result, and pursuant to section 8(a) of the Act, the arbitrator ordered the employer to provide written authorization for claimant to undergo such surgical procedure.  The Commission affirmed and adopted the arbitrator's decision, and the circuit court confirmed the Commission's decision.

On appeal, the employer contends that the Commission erred in finding that claimant's low back condition was causally connected to his October 1993 accident, as the medical records of Drs. Lacey, Anderson, and Soo In Lee, all comport with Dr. Shafer's finding that no such causal connection existed.

The employer contends further that claimant's testimony, concerning the pain he felt after his accident and his return to work, was not credible and was rebutted by medical records and McCann's testimony, respectively.

A determination as to a causal connection is a question of fact to be decided by the Commission, which will not be disturbed unless it is against the manifest weight of the evidence, 
i
. 
e
. unless the opposite conclusion is clearly apparent.  
Antonopoulos v. Industrial Comm'n
, 195 Ill. App. 3d 689, 693 (1990).  It is well settled that in workers' compensation cases it is the function of the Commission to decide questions of fact and causation, to judge witness credibility, and to resolve conflicts in evidence.  
Mendota Township High School v. Industrial Comm'n
, 243 Ill. App. 3d 834, 836 (1993).

Here, the Commission adopted the arbitrator's specific finding that Dr. Shafer, in categorizing claimant's condition as a simple back strain or groin pull, disregarded the results of claimant's MRI, myelogram, and post myelogram CT scan, all of which evidenced significant findings of herniated discs.  The Commission adopted the arbitrator's opinion that claimant's testimony concerning the fact that he had neither previously suffered any low back injury, nor had he suffered any injury since his October 12, 1993, accident was credible.  The arbitrator noted that claimant underwent extensive physical therapy after his October 1993 accident, which failed to improve his condition.

Pursuant to 
Mendota
, it was within the Commission's province to reject the opinions and conclusions of Dr. Shafer, and to find claimant's testimony credible.  Claimant's testimony, coupled with the MRI, myelogram, and post myelogram CT scan results, all of which consistently produced significant findings of herniated discs, support the Commission's causal connection finding.  Therefore, it cannot be said that such finding was against the manifest weight of the evidence.

Next, the employer contends that the Commission's future medical expense award was against the manifest weight of the evidence.  The employer notes that only Dr. Miz opined claimant was in need of surgery, while the opinions of Drs. Lacey, Anderson, and Soo In Lee support Dr. Shafer's conclusion that claimant was not in need of surgery.  The employer maintains therefore that the greater weight of the evidence established such surgical procedure was unreasonable and unnecessary.

Section 8(a) of the Act entitles a claimant to compensation for all necessary medical, surgical, and hospital services, thereafter incurred, which are reasonably required to cure or relieve the effects of injury.  See 820 ILCS 305/8(a) (West 1996).  Such prescribed services not yet performed or paid for are considered to have been "incurred" within the meaning of section 8(a).  See 
Plantation Manufacturing Co. v. Industrial Comm'n
, 294 Ill. App. 3d 705, 710 (1997).

In this case, the Commission was presented with conflicting medical opinions concerning the necessity of claimant's surgery.  We recognize that it is within the Commission's province to weigh and to judge witness credibility, to resolve conflicts in medical testimony, and to choose among conflicting inferences therefrom, and we will not disturb the Commission's findings as to these issues, even though we might have decided differently on the same facts, unless such findings are against the manifest weight of the evidence.  See 
Dexheimer v. Industrial Comm'n
, 202 Ill. App. 3d 437, 442 (1990).

The Commission adopted the arbitrator's acceptance of Dr. Miz's opinion that based upon the objective tests, a surgical lumbar microdiscectomy to both of claimant's affected levels in his low back would alleviate his condition of ill-being.  Pursuant to 
Dexheimer
, it was within the Commission's province to do so, and to find that the prescribed surgical procedure was reasonable and necessary.  Therefore, it cannot be said that such decision was against the manifest weight of the evidence.

Lastly, the employer contends that the Commission's order requiring it to provide written authorization for claimant to undergo such surgical procedure directly contradicts this court's decision in 
Plantation
.

In 
Plantation
, as here, conflicting medical testimony was presented in regard to the need for a claimant's back surgery.  One physician opined that surgery offered a remote probability of relief and would be hazardous, while another physician recommended surgery based upon failed conservative treatments.  The employer refused to authorize payment of the procedure.  The Commission ordered the employer to provide written authorization to the surgeon and to pay all reasonable and necessary bills related to the surgery.

In 
Plantation
, 294 Ill. App. 3d at 711-12, we refused to substitute our judgment for that of the Commission's judgment, and we held that it was within the Commission's province to adopt the medical opinion which recommended the claimant's surgery, and to find that such surgery was reasonable and necessary.  We ordered the employer to pay all reasonable costs in connection with the surgery, however, we eliminated the Commission's directive that the employer provide written authorization for the surgery.  In doing so, we noted that such written authorization would leave the employer with no recourse to challenge the reasonableness of the cost of surgery.

Our holding in 
Plantation
, however, was based upon facts distinguishable from the instant case.  
Plantation
 involved a post-arbitration petition under section 8(a) of the Act, and the request for surgery was made in a supplemental proceeding to the Commission.  All of the issues presented in 
Plantation
 had been resolved, and the claimant received a permanency award.  The instant matter, on the other hand, involved a 19(b) arbitration hearing, and the issues regarding further TTD benefits or permanency remained open for determination in subsequent proceedings.  Therefore, the opportunity to challenge the reasonableness of the cost of the surgery in subsequent hearings is available to the employer.

In light of the fact that 
Plantation
 is distinguishable from the instant case, we find that in the this matter the Commission's directive to the employer to provide written authorization for Dr. Miz's prescribed surgery was proper.

Based upon the foregoing, the circuit court of Cook County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, COLWELL, and RARICK, JJ., concurring.