ABB C-E SERVICES, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (John Haney, Appellee).

Fifth District   No. 5—99—0697

Opinion filed October 11, 2000.

McCULLOUGH, P.J., specially concurring.

R. Mark Cosimini, of Rusin Patton Maciorowski & Friedman, Ltd., of Urbana, for appellant.

James C. Serkland, of Serkland & Muelhausen, of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:
Claimant, John Haney, sought benefits pursuant to the Workers'

Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1994)) for injuries sustained while in the employ of ABB C-E Services (ABB). Haney was employed by ABB as a carpenter and a millwright. On September 16, 1995, Haney was working on his hands and knees when a 16-inch cylindrical brass bar weighing between 9 and 10 pounds fell approximately 40 feet and struck Haney on the lower back. He was taken to the emergency room and advised to follow up with his family physician, Dr. Sunga. Dr. Sunga treated him until December 7, 1995. Based upon the results of an MRI, Dr. Sunga referred Haney to Dr. Meriwether, a neurosurgeon.

Dr. Meriwether treated Haney from October 20, 1995, through December 1, 1995. After a month of diagnostic tests, Dr. Meriwether recommended surgery.

Mary Sandine, a company case manager, requested that Haney undergo an independent medical examination by Dr. Gregory Loomis. Haney saw Dr. Loomis on January 12, 1996. Dr. Loomis concluded that Haney had a preexisting spinal stenosis in his lumbar spine which had become symptomatic as a result of the work accident. Dr. Loomis also recommended surgery and on February 5, 1996, performed a bilateral decompressive lumbar laminectomy at the L4-5 level. Haney suffered complications that required two additional surgeries, on February 22 and March 6, 1996.

On July 2, 1996, Haney underwent a functional capacity valuation. It was determined that Haney could perform at the medium-heavy physical demand level for an eight-hour day.

Haney attempted to do some light work around his farm. At this time he was on pain mediation, including Lortab, a class 3 narcotic. While on this medication, Haney noted that his speech was affected, his reflexes were slower, and he often seemed drowsy or depressed.

Haney saw Dr. Loomis again on August 23, 1996. He told Dr. Loomis that it was becoming almost impossible for him to do things around the farm. Dr. Loomis renewed Haney's Lortab prescription, noting, "I think he is going to remain and be 100% disabled."

Investigators hired by ABB performed surveillance of Haney and obtained videotapes of him working around his farm on August 27 and 28, 1996. Haney was seen bent over the hood of a truck performing maintenance for about 40 minutes. He was also seen lifting parts and carrying them to the back of the truck.

On September 20, 1996, Dr. Loomis released Haney, finding him to be at maximum medical improvement. Haney returned to his job in October 1996. His duties were to prepare scaffolds, which required him to climb the scaffolding. By the end of the day, Haney was in severe pain. Halfway through the second day, Haney had to take a Lortab

for pain. He told his supervisor that working on a scaffold while taking such medication made him nervous, and he left work.

Haney saw Dr. Loomis again on October 23, 1996, and told him about his difficulties on the job. Dr. Loomis stated that working while taking such mediation was contraindicated: "[Haney] should not be taking that medicine and working on any elevated platform or running machinery ***. My overall impression is that [Haney] is not going to be able to return to this type of work ever again. I feel he is 100% disabled from this type of work[,] which is essentially his entire livelihood." Dr. Loomis noted that federal regulations prohibited the continuation of narcotic-based prescriptions and suggested that Haney needed to move to vocational rehabilitation or a pain management program as an alternative.

Haney saw Dr. Loomis again on December 3, 1996. In a December 5, 1996, letter to Sandine, Dr. Loomis opined that the July 2, 1996, functional capacity evaluation did not reflect Haney's capabilities because he was taking some high-dose analgesics at the time. Dr. Loomis reiterated his opinion that Haney was going to be totally disabled from any job that he previously had. Dr. Loomis stated that Haney would not be able to lift more than 10 to 15 pounds, would not be able to sit more than an hour or two without severe pain, and would not be able to do any twisting, turning, bending, stretching, or repetitive movement of his lower spine. Dr. Loomis further stated that Haney would require long-term analgesic narcotic medication which would affect his thinking process, as well as the safety of doing any dangerous work, driving, or operating machinery.

In a February 28, 1997, report, Dr. Loomis noted that Haney's condition had not improved and that he was totally disabled from any type of work.

In a June 20, 1997, letter to Sheila Jarvis, ABB's rehabilitation nurse, Dr. Loomis again stated that Haney was at maximum medical improvement. Dr. Loomis also stated that Haney's condition was worsening. Dr. Loomis felt that Haney was disabled from his regular line of work because he was taking narcotic medication and because of the biomechanics of his injury. Dr. Loomis concluded, "[H]aney is 100% disabled from any work whatsoever."

Haney was examined by Susan Entenberg, a rehabilitation counselor, on July 10, 1997. Based upon her examination, Dr. Loomis's June 20, 1997, report, and Haney's medical records, Entenberg concluded that Haney was not a candidate for vocational rehabilitation and that a stable job market did not exist for him at that time. Entenberg conceded that Haney's description of his physical limitations was not consistent with the findings of the July 2, 1996,

functional capacity evaluation. Entenberg testified that, based upon the results of the evaluation, Haney would be a candidate for rehabilitation and that a stable labor market for him existed. Entenberg also admitted that she did not perform a labor market survey.

Haney was also examined by Dr. Philip George at ABB's request. Dr. George found tenderness about the lumbar spine and extremely restricted back motion. Based upon his examination and a review of Haney's medical records, Dr. George diagnosed lumbar sprain/contusion, degenerative lumbar disc disease, postdecompressive laminectomy at L4-5 with two surgical reexplorations, and probable arachnoiditis secondary to the surgical procedures. Dr. George found Haney obviously disabled from his former work and permanently disabled from other light gainful work because of his use of narcotic medication to control pain. Dr. George reviewed the surveillance tapes and stated that they did not suggest that Haney's back was normal or that he was capable of heavy lifting, repeated forward bending, pushing, pulling, or overhead work. Dr. George continued to feel that Haney was totally disabled from his former job but that he could possibly return to light-duty employment if he could be "weaned from his narcotic medication."

The arbitrator found Haney to be permanently and totally disabled. Based on Dr. Loomis's statement in his December 5, 1996, letter regarding the accuracy of the functional capacity evaluation, the arbitrator found that such evaluation was not determinative of Haney's current or nonnarcotic functional capacity. With respect to the surveillance tapes, the arbitrator found that they revealed no significant activity.

The Industrial Commission (Commission) modified the beginning date of Haney's permanent and total disability award but otherwise affirmed and adopted the decision of the arbitrator. The Commission's decision was confirmed by the circuit court of Hardin County.

On appeal, ABB argues that the Commission's determination that Haney was permanently disabled was contrary to the manifest weight of the evidence. Specifically, ABB contends that the evidence fails to prove that Haney was obviously unemployable, that the burden of proof remained upon him to establish the unavailability of employment to a person in his circumstances, and that he failed to do so.

■ Our supreme court has set forth the standards for determining whether an employee is entitled to a permanent total disability award:

"Under *A.M.T.C.* [*of Illinois, Inc. v. Industrial Comm'n*, 77 Ill. 2d 482] if the claimant's disability is limited in nature so that he is not obviously unemployable, or if there is no medical evidence to support a claim of total disability, the burden is upon the claimant

to establish the unavailability of employment to a person in his circumstances. However, once the employee has initially established that he falls in what has been termed the 'odd-lot' category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market [citation]), then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant." *Valley Mould & Iron Co. v. Industrial Comm'n*, 84 Ill. 2d 538, 546-47, 419 N.E.2d 1159, 1163 (1981).

■ If employees fail to make out a *prima facie* case that they fall into the "odd-lot" category, then it remains incumbent upon them to demonstrate that, given their present condition and in light of their age, training, experience, and education, they are permanently and totally disabled. See *Valley Mould*, 84 Ill. 2d at 547, 419 N.E.2d at 1163. They may accomplish this by a showing of diligent but unsuccessful attempts to find work or by proof that because of the abovementioned qualities they are unfit to perform any but the most menial tasks for which no stable market exists. See *Valley Mould*, 84 Ill. 2d at 547, 419 N.E.2d at 1163. Thus, pursuant to the analytical framework set forth in *Valley Mould*, there are three ways by which employees can demonstrate that they are permanently and totally disabled: by a preponderance of the medical evidence, by showing a diligent but unsuccessful job search, or by demonstrating that because of their age, training, education, experience, and condition, no jobs are available to a person in their circumstances.

ABB argues that because Haney failed to demonstrate that he was obviously unemployable, the burden remained on him to show that he fell into the "odd-lot" category. ABB contends that Haney failed to introduce any evidence of a job search or any evidence showing that because of his age, training, experience, education, and condition, there are no jobs available to a person in his circumstances.

■ It is well settled that the question of whether a claimant is permanently and totally disabled is a question of fact for the Commission, and its determination thereof will not be disturbed on review unless it is contrary to the manifest weight of the evidence. See *Sorenson v. Industrial Comm'n*, 281 Ill. App. 3d 373, 666 N.E.2d 713 (1996). It is also well settled that the determination of how much weight to assign to a particular piece of evidence is a matter for the Commission, and a reviewing court will not reweigh the evidence and substitute its opinion for that of the Commission's. See *Bennett Auto Rebuilders v. Industrial Comm'n*, 306 Ill. App. 3d 650, 714 N.E.2d 1064 (1999).

■ ABB maintains that the July 2, 1996, functional capacity evalu-

ation demonstrated that Haney could perform at the medium-heavy demand level, that the surveillance video revealed that Haney was capable of working around his farm, and that Entenberg opined that Haney was a candidate for rehabilitation. Thus, ABB contends, the evidence does not support a finding that Haney was obviously unemployable. We do not agree.

Drs. Loomis and George both opined that Haney was totally disabled. Although she agreed that, based upon the functional capacity evaluation, Haney was a candidate for rehabilitation, Entenberg concluded that Haney was not a candidate for vocational rehabilitation and that no stable labor market existed for him. The Commission discounted the results of the evaluation based upon Dr. Loomis's opinion that it was not reflective of Haney's capabilities because he was on analgesic medication at the time. ABB does not challenge the accuracy of Dr. Loomis's opinion on this point. The Commission found nothing in the surveillance tapes that contradicted either Haney's testimony or the opinions of the medical and rehabilitation experts. Although the Commission did not explicitly find that Haney was obviously unemployable, such a finding is clearly implied by the language of the Commission's decision and the absence of any "odd-lot" analysis. Reviewing the record, the overwhelming weight of the medical evidence supports the Commission's decision.

■ Haney has filed a motion for sanctions pursuant to Supreme Court Rule 375(b) (134 Ill. 2d R. 375(b)), arguing that the present appeal is without merit and that its only purpose is to delay enforcement and cause him to incur unnecessary expense. This court ordered the motion taken with the case. While not persuasive, ABB's argument is not without some foundation in the evidence, namely, the functional capacity evaluation. We therefore deny the motion for sanctions.

For the foregoing reasons, the judgment of the circuit court of Hardin County is affirmed.

Affirmed.

HOFFMAN, COLWELL, and HOLDRIDGE, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, specially concurring:

I agree with the majority that claimant is permanently totally disabled. My only disagreement, if any, is to make it clear, I believe, that the disability is medical and not odd lot.

On August 23, 1996, Dr. Loomis stated, "I think he is going to remain and be 100% disabled." On October 23, 1996, Dr. Loomis stated, "I feel he is 100% disabled from this type of work[,] which is essentially his entire livelihood."

Susan Entenberg stated, "After reviewing the medical records, I felt that he wasn't a candidate for vocational rehabilitation, and really a job market didn't exist for him at the present time." Dr. Loomis, in referring to his discussion with Sheila Jarvis, a rehabilitation nurse employed by respondent's rehabilitation company, CRA, stated: "In summary as you can see from the above, I have tried to consolidate this case for you since you are just taking it over, but I feel John is 100% disabled from any work whatsoever. I don't see how he is going to be able to do it." On August 25, 1997, Jarvis wrote a letter to claimant, stating she was closing her file because the case would "be handled from a claims perspective."

As indicated above, I believe that the arbitrator's award, affirmed by the Commission, awarded total disability on the basis of the medical testimony.