HOMEBRITE ACE HARDWARE, Appellant, v. THE INDUSTRIAL COMMISSION et al. (Kevin Schnoeker, Appellee).

Fifth District   No. 5—03—0650WC

Opinion filed June 8, 2004.

334

Aileen M. Solovy and James A. Santucci, both of Chilton, Yambert, Porter & Young, L.L.P., of Chicago, for appellant.

Bruce R. Cook, of Cook, Ysursa, Bartholomew, Brauer & Shevlin, Ltd., of Belleville, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

Claimant, Kevin Schnoeker, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2002)) while working for employer, Homebrite Ace Hardware. Following a hearing on claimant's section 19(b) petition (820 ILCS 305/19(b) (West 2002)), the arbitrator awarded claimant 54 weeks of temporary total disability (TTD) benefits and directed employer to authorize claimant's prescribed cervical spine surgery. The Industrial Commission (Commission) affirmed and adopted the

arbitrator's decision, and it remanded the case for further proceedings pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 332-35 (1980). The circuit court confirmed the Commission's decision, and employer timely appealed. We affirm and remand pursuant to *Thomas*, 78 Ill. 2d at 332-35.

## I. BACKGROUND

Claimant worked for employer as paint department manager. In 2000, claimant had worked for employer for 10 years and had managed the paint department for about 5 years. On November 6, 2000, claimant heard a pop in his back while he unloaded five-gallon buckets of driveway sealer from a pallet. He continued working, but felt back pain about four hours later. Claimant reported his injury to employer and did not return to work.

On November 9, 2000, claimant saw a doctor who worked with his family physician, Dr. Garces. Claimant related the popping episode and complained of lower back pain. The associate diagnosed a possible disc herniation or bulging and prescribed pain medication and light work duty. The associate also referred claimant to Dr. Charisse Barta, a neurologist. Claimant returned to Dr. Garces's office for follow-up visits on November 14 and 28, 2000, and complained of continued lumbar pain. Dr. Garces prescribed physical therapy and suggested light-duty work for four hours per day for two weeks.

Dr. Barta examined claimant on November 30, 2000, and diagnosed lower back pain and ordered an MRI of claimant's lumbosacral spine. She next examined claimant on December 28, 2000. In her notes, she wrote that claimant's lumbar MRI revealed a herniated disc at L3-L4 and a disc bulge at L4-L5. She also stated that claimant could return to work with a restriction of no lifting over 10 pounds. Dr. Garces subsequently referred claimant to Dr. Christopher Heffner, a neurosurgeon.

According to claimant, about six weeks to two months after the accident, he began feeling pain in his neck and upper back. Claimant testified that he had never experienced any neck problems before his injury, but he did experience back problems on several occasions.

At his deposition, Dr. Heffner, a board-certified neurosurgeon, testified that he first examined claimant on January 30, 2001. Claimant explained that he continued to experience back pain that radiated to his right posterior hip. He also had difficulty sleeping and with sexual function. Dr. Heffner reviewed claimant's MRI films and diagnosed herniated lumbar disc disease with back pain and hip pain. Dr. Heffner prescribed steroid medication and a TENS unit. Claimant was already off of work and Dr. Heffner agreed with that recommenda-

tion. Over employer's counsel's objection, he opined that claimant's condition was causally related to his work accident.

Dr. Heffner next saw claimant on February 13, 2001. At this time, claimant complained of pain to his neck that radiated to his arm. Dr. Heffner opined, over counsel's objection, that claimant's condition at this time was causally related to his work accident. Following two lumbar epidural injections, claimant complained at a March 6, 2001, visit, of neck and lower back pain, but no pain radiating to his legs. Dr. Heffner ordered another injection and continued physical therapy. During a March 29, 2001, visit, claimant complained of neck pain that radiated to his right arm and to the back of his head. The MRI films revealed degenerative changes of the C5-C6 disc with some posterior disc bulging. Dr. Heffner recommended cervical traction. Again, over counsel's objection, he opined that claimant's condition at this time was causally related to his work accident. Dr. Heffner continued to keep claimant off of work and recommended continued physical therapy and home cervical traction.

Dr. Heffner next saw claimant on April 20, 2001. He felt that claimant's neck was a more significant problem at this time and discussed with claimant surgical intervention. During a May 17, 2001, visit, claimant complained of neck and lower back pain and posterior headaches. He also complained of pain radiating from his neck to his right upper shoulder and arm. Dr. Heffner's continuing diagnosis was a herniated lumbar disc and cervical degenerative disc disease. He again discussed with claimant surgical intervention with respect to his cervical spine. Claimant again saw Dr. Heffner on June 21, and July 31, 2001. His condition had not significantly changed.

Claimant agreed to undergo the cervical surgery, and it was scheduled for September 10, 2001. However, he did not undergo the procedure because employer did not authorize it. Dr. Heffner did not see claimant again after July 31, 2001, and never released him to return to work. According to Dr. Heffner, as of July 31, 2001, claimant's lower back condition had improved, and claimant did not complain of radicular pain to his leg. Dr. Heffner advised claimant to treat the condition on an as-needed basis. He testified that he would have released claimant to return to work if the cervical condition had not developed. Dr. Heffner further stated that he did not issue a report about causation with respect to claimant's cervical spine.

On July 16, 2001, Dr. R. Peter Mirkin examined claimant on employer's behalf and reviewed his MRI films. In his evaluation, Dr. Mirkin stated that there was no relationship between claimant's neck condition and his work injury. He noted that claimant's neck pain did not develop for several months after the injury. Dr. Mirkin also stated

that claimant had a very small disc bulge in his neck and that he would not recommend surgery for it because it would not be beneficial. He recommended that claimant return to work.

On February 5, 2002, the arbitrator awarded claimant 54 weeks' TTD benefits for the period November 7, 2000, through November 21, 2001, and directed employer to authorize the treatment prescribed by Dr. Heffner, including the cervical spine surgery. Finding Dr. Heffner's causation opinion credible, the arbitrator found that claimant's condition of ill-being, including his cervical condition, was causally related to his work accident.

On November 18, 2002, the Commission, with one commissioner dissenting, affirmed and adopted the arbitrator's decision. In addition, it found that employer could not reasonably claim surprise by Dr. Heffner's causation opinion and thus overruled employer's objections to his testimony. The Commission remanded the case for further proceedings pursuant to *Thomas*, 78 Ill. 2d at 332-35.

On September 17, 2003, the circuit court confirmed the Commission's decision. Employer timely appealed.

## II. STANDARDS OF REVIEW

■ The first issue on appeal involves an evidentiary ruling. Evidentiary rulings made during the course of a workers' compensation case will not be disturbed on review absent an abuse of discretion. *Mobil Oil Corp. v. Industrial Comm'n*, 327 Ill. App. 3d 778, 788 (2002). An abuse of discretion occurs where no reasonable person would take the view adopted by the lower tribunal. *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 801 (2002).

The second and third issues on appeal involve causation and the medical expenses award. The Commission is charged with determining the question of causation, and we will not disturb its finding unless it is against the manifest weight of the evidence. *Horath v. Industrial Comm'n*, 96 Ill. 2d 349, 356 (1983). The claimant has the burden of proving that the medical services were necessary and the expenses were reasonable. *Gallentine v. Industrial Comm'n*, 201 Ill. App. 3d 880, 888 (1990). What is reasonable and necessary is a question of fact for the Commission, and its determination will not be overturned unless it is against the manifest weight of the evidence. *F&B Manufacturing Co. v. Industrial Comm'n*, 325 Ill. App. 3d 527, 534 (2001). The test for determining whether a factual finding is against the manifest weight of the evidence is if there was sufficient evidence in the record to support the Commission's determination. *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 450 (1995).

## III. ANALYSIS

### A. Evidentiary Ruling

Employer first argues that the Commission erred in overruling employer's objections to Dr. Heffner's causation testimony, which were based on *Ghere v. Industrial Comm'n*, 278 Ill. App. 3d 840 (1996), because no report was tendered to employer in advance of the testimony notifying employer that Dr. Heffner would testify about the issue.

■ Section 12 of the Act provides, in relevant part:

> "In all cases where the examination is made by a surgeon engaged by the injured employee, and the employer has no surgeon present at such examination, it shall be the duty of the surgeon making the examination at the instance of the employee, to deliver to the employer, or his representative, a statement in writing of the condition and extent of the injury to the same extent that said surgeon reports to the employee and the same shall be an exact copy of that furnished to the employee, said copy to be furnished the employer, or his representative, as soon as practicable but not later than 48 hours before the time the case is set for hearing. *** If such surgeon refuses to furnish the employer with such statement to the same extent as that furnished the employee, said surgeon shall not be permitted to testify at the hearing next following said examination." 820 ILCS 305/12 (West 2002).

The purpose of having the claimant's physician send a copy of his or her records to the employer no later than 48 hours prior to the arbitration hearing is to prevent the claimant from springing surprise medical testimony on the employer. *Ghere*, 278 Ill. App. 3d at 845.

In *Ghere*, the employee died of a heart attack while working as a flagman for employer. The employee's doctor testified that he treated the employee on several occasions, but never treated him for heart problems. The arbitrator sustained the employer's objection to the physician's testimony concerning whether the employee's work activities or environment could or might have precipitated his heart attack because the opinions were not furnished to the employer 48 hours before the hearing. On appeal, this court found that the physician's causation opinion would have gone beyond the contents of his medical records because there was no mention of causation in the records or that the physician ever treated the employee for a heart condition. Accordingly, we held that there was nothing in the records to put the employer on notice that the physician had an opinion regarding causation that the employer could have requested, and we upheld the arbitrator's exclusion of the testimony. *Ghere*, 278 Ill. App. 3d at 846.

■ Here, employer contends that the Commission cannot arbi-

trarily determine when an opinion constitutes surprise testimony. It suggests that the Commission must strictly adhere to *Ghere* and thus any undisclosed opinion testimony must be deemed as surprise and be barred. Employer argues that it would be unduly burdensome for a court to have to regularly inquire as to what parties expect an opposing witness to testify to in order to guarantee no surprise. We disagree.

We find no indication in *Ghere* that its holding must be so strictly interpreted. The *Ghere* court examined the physician's records and treatment history to determine whether the employer was put on notice regarding the possibility that the physician might provide causation testimony. The court did not set forth a bright-line rule or presumption that undisclosed opinion testimony constitutes surprise. Furthermore, *Ghere* is factually distinguishable because the physician in *Ghere* had never treated the employee's heart condition, whereas Dr. Heffner did treat claimant for his neck problems. Dr. Heffner's records contain details about his treatment of claimant's neck complaints and therefore the records put employer on notice that Dr. Heffner might testify as to a causal relationship between the neck condition and claimant's work accident. Indeed, the only contested issue at arbitration was claimant's cervical injury. Employer's suggestion that Dr. Heffner's testimony should have been excluded is not well taken under these facts.

In sum, we conclude that the Commission did not abuse its discretion in admitting Dr. Heffner's causation testimony.

## B. Causation

■ Next, employer argues that the Commission's causation determination is against the manifest weight of the evidence. To obtain compensation under the Act, a claimant must show, by a preponderance of the evidence, that he or she suffered a disabling injury that arose out of and in the course of the claimant's employment. *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187, 194 (2002). In analyzing the "arising out of" component, we are primarily concerned with a causal connection. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203 (2003).

Employer contends that, notwithstanding the *Ghere* objections discussed above, Dr. Heffner's causation opinion was fundamentally flawed. It asserts that Dr. Heffner opined only that there was a "possibility" of a causal relationship between claimant's neck condition and his work accident and did not explain how the cervical complaints related to the lumbar complaints and arose out of the occurrence. According to employer, at no time during the 98 days following claimant's accident did his physical examinations or recitations of his medical

history indicate that claimant had any cervical complaints. Moreover, Dr. Heffner did not explain how a patient complaining of lumbar pain could develop radiating symptoms upwards into the cervical region that could be causally related to the same injury.

It is the Commission's function to weigh the testimony on causation (*Pollard v. Industrial Comm'n*, 91 Ill. 2d 266, 277 (1982)), and we cannot conclude here that its reliance on Dr. Heffner's testimony was unreasonable. During his deposition, Dr. Heffner testified on four occasions regarding the causal relationship between claimant's neck condition and his work accident. In his response to the first question, which related to claimant's condition as of February 13, 2001, Dr. Heffner stated that it was reasonable to assume that there was a causal relationship. When asked to clarify this response with respect to claimant's complaints of pain radiating upward to his neck, Dr. Heffner testified, "Yes, I think that's all part of the same problem." Next, addressing claimant's condition as of a March 6, 2001, office visit, Dr. Heffner opined, in relevant part, "I think his situation does seem to be causally related to the events of November." During the third interchange, which addressed causation as of claimant's March 29, 2001, visit, Dr. Heffner opined, in relevant part, "it is possible that the neck problem, in particular the pain problem relating to his neck, may be related to that, yes." Finally, when asked to opine on causation as of claimant's last office visit on July 31, 2001, Dr. Heffner replied, "Yes, I do think that there is certainly the possibility of causal relationship, yes."

Reading the foregoing responses as a whole, we conclude that Dr. Heffner's causation testimony was not speculative or equivocal. *Cf. McRae v. Industrial Comm'n*, 285 Ill. App. 3d 448, 452-53 (1996) (physician's opinion that claimant's work "may well have caused" claimant's condition of ill-being was equivocal and ambiguous). Nevertheless, even if one medical witness is equivocal on the question of causation, it is for the Commission to determine which medical opinion is to be accepted, and it may attach greater weight to the treating physician's opinion. *Williams v. Industrial Comm'n*, 244 Ill. App. 3d 204, 210 (1993); see also *Caterpillar Tractor Co. v. Industrial Comm'n*, 97 Ill. 2d 35, 43 (1983). We cannot conclude here that the Commission's adoption of Dr. Heffner's testimony was unreasonable.

We also reject employer's contention that Dr. Heffner's failure to explain the link between claimant's lumbar complaints and his cervical complaints renders the Commission's reliance on his causation testimony unreasonable. It was sufficient that Dr. Heffner testified as to a causal connection. He was not necessarily required to link claimant's various complaints.

Finally, we also reject employer's argument that the passage of 98 days between claimant's work accident and his first complaints of cervical pain necessarily renders Dr. Heffner's causation testimony suspect. Dr. Heffner testified that claimant did not relate any neck problems prior to his work accident and that there was a causal relationship between claimant's work accident and his neck condition. It is the Commission's function to judge the credibility of the witnesses, to draw reasonable inferences from their testimony, and to resolve any conflicts in claimant's favor. *Sisbro, Inc.*, 207 Ill. 2d at 207. We cannot conclude that the Commission's resolution of the causation issue was against the manifest weight of the evidence.

## C. Medical Expenses

■ Employer's final argument is that the Commission erred in awarding claimant prospective medical benefits when it directed employer to authorize claimant's cervical surgery. According to employer, a prospective medical benefits award is an extraordinary form of relief that is available only when it is the only available option. We disagree.

Section 8(a) of the Act entitles a claimant to compensation for all necessary medical, surgical, and hospital services "thereafter incurred" that are reasonably required to cure or relieve the effects of injury. 820 ILCS 305/8(a) (West 2002). Specific procedures or treatments that have been prescribed by a medical service provider are "incurred" within the meaning of the statute, even if they have not yet been paid for. *Plantation Manufacturing Co. v. Industrial Comm'n*, 294 Ill. App. 3d 705, 710 (1997).

In *Bennett Auto Rebuilders v. Industrial Comm'n*, 306 Ill. App. 3d 650, 655-56 (1999), this court held that the Commission's order directing the employer to provide written authorization for a prescribed surgery was proper. In that case, which involved a section 19(b) petition, one of the claimant's physician's prescribed a lumbar microdiscectomy. The employer refused to authorize the surgery, and the claimant had not been released to return to work. The Commission found the surgical procedure reasonable and necessary and ordered the employer to provide written authorization for the claimant to undergo the procedure. On appeal, the employer argued that the Commission's future medical expense award was against the manifest weight of the evidence because only one physician had opined that the surgery was necessary. This court disagreed and upheld the Commission's award. We held that it was within the Commission's province to adopt the medical opinion that recommended the surgery. *Bennett*, 306 Ill. App. 3d at 655. Additionally, as the case involved a section 19(b) petition,

we upheld the Commission's directive to the employer to provide written authorization because the opportunity to challenge the cost of the surgery in subsequent proceedings remained available to it. *Bennett*, 306 Ill. App. 3d at 656.

Here, employer attempts to distinguish *Bennett* by arguing that all of claimant's symptomology in that case pertained to the same part of the body, whereas, here, claimant is claiming injury to a different part of the body than that for which he was initially treated. Given that we have upheld the Commission's causation finding with respect to claimant's cervical condition, we find this distinction irrelevant as it pertains to the medical expenses award and conclude that *Bennett* controls.

We emphasize that claimant is entitled to recover only reasonable medical expenses that are causally related to his work accident and that are determined to be required to diagnose, relieve, or cure the effects of his injury. 820 ILCS 305/8(a) (West 2002). Therefore, as we noted in *Bennett*, 306 Ill. App. 3d at 656, because issues regarding entitlement to additional TTD benefits and permanency remain open for determination in further proceedings, employer may challenge the reasonableness of the cost of claimant's cervical surgery in subsequent hearings.

In sum, we conclude that the Commission's award of prospective medical benefits was not against the manifest weight of the evidence.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed, and the cause is remanded to the Commission for further proceedings pursuant to *Thomas*, 78 Ill. 2d at 332-35.

Affirmed; cause remanded.

McCULLOUGH, P.J., and HOFFMAN, HOLDRIDGE, and GOLD-ENHERSH, JJ., concur.