KISHWAUKEE COMMUNITY HOSPITAL, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Lesley Bonney, Appellee).

Second District (Illinois Workers' Compensation Commission Division)
No. 2—04—0512WC

Opinion filed March 14, 2005.—Rehearing denied May 23, 2005.

Kevin J. Reid, of Garofalo, Schreiber, Hart & Storm, Chtrd., of Chicago, for appellant.

Richard L. Turner, Jr., of Law Office of Richard L. Turner, Jr., of Sycamore, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Claimant, Lesley Bonney, sought benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)) for

repetitive trauma injuries she allegedly sustained while employed as a nursing assistant by Kishwaukee Community Hospital, the employer. The arbitrator concluded that claimant sustained accidental injuries arising out of and in the course of her employment and that timely notice was given. The arbitrator awarded temporary total disability (TTD) from January 25, 2001, through October 31, 2002, for a total of 91⁶/₇ weeks at a rate of $250.99 per week, and $4,461 in outstanding medical bills, which included all outstanding medical bills except for a bill in the amount of $153.80 due Dr. Thomas Adkins for services related to treatment for claimant's left cubital tunnel syndrome. On review, the Illinois Industrial Commission (Commission)[1] affirmed the decision of the arbitrator with modifications. The Commission found that claimant sustained an accidental injury on January 24, 2001, and that a causal connection exists between the accident and claimant's bilateral carpal tunnel syndrome and bilateral basilar joint arthritis, but that no causal connection exists between the accident and claimant's left cubital tunnel condition. The Commission agreed with the arbitrator that the employer was not responsible for the $153.80 bill from Dr. Adkins, and further found that the employer was not responsible for another bill in the amount of $184 for an EMG, as it, too, related to claimant's left cubital tunnel condition. The Commission denied claimant's request for penalties and attorney fees. The circuit court of De Kalb County confirmed the Commission in its entirety. The issues raised by the employer on appeal are: (1) whether claimant sustained repetitive trauma injuries to her right thumb and left thumb arising out of and in the course of her employment; (2) whether the Commission erred in overruling the employer's objection to Dr. Steven Glasgow's causation testimony, which was based on *Ghere v. Industrial Comm'n*, 278 Ill. App. 3d 840, 663 N.E.2d 1046 (1996); (3) whether the Commission's decision finding that claimant's bilateral carpal tunnel condition arose out of and in the course of her employment is against the manifest weight of the evidence or error as a matter of law; and (4) whether the Commission's award of TTD is in error. We affirm.

## FACTS

Claimant, age 55 at the time of the hearing, began working for the employer as a nursing assistant in 1969 and worked continuously in that capacity until January 24, 2001. Claimant testified she is 5 feet 2

---

[1]Effective January 1, 2005, the name of the Industrial Commission was changed to the "Illinois Workers' Compensation Commission." However, because the Industrial Commission was named as such when the instant cause was originally filed, we will use this name for purposes of consistency.

inches tall and weighs 112 pounds. While working for the employer, claimant was often assigned elderly patients who had suffered strokes and were without use of their limbs or were alcoholics. Many of her patients were combative. They normally weighed between 150 and 250 pounds. Claimant's duties included changing sheets, bathing patients, moving patients from beds to chairs and commodes, and pushing patients on gurneys. She was assigned approximately six patients per shift.

Shelly Johnson, who is employed by the employer as an employee health nurse and occupational coordinator, corroborated claimant's testimony that claimant's job required her to lift patients in excess of 200 pounds, many of whom were stroke victims or combative.

On January 24, 2001, claimant reported to the employer's emergency room after discovering she could no longer button patients' gowns and experiencing stiffness, tingling, and soreness in both her hands. According to claimant, she began experiencing symptoms in her left hand six or seven months prior to January 24, 2001. The symptoms in her right hand started later. At the emergency room, claimant was diagnosed with chronic bilateral wrist pain with probable bilateral carpal tunnel syndrome. Claimant was ordered not to lift over five pounds, making her unable to work.

An accident report was admitted into evidence. It was signed by claimant on February 10, 2001. In the report, claimant set forth that her injuries occurred while lifting, pulling, and pushing patients, and her symptoms existed for approximately one year, with the symptoms getting progressively worse. She indicated that the pain in her hands kept her up at night and described the area of injury as both wrists.

After claimant's emergency room visit, she followed up with Dr. Glasgow and his partner, Dr. Taizoon Baxamusa. Dr. Glasgow is an orthopedic surgeon who is "fellowship trained in sports medicine." Dr. Baxamusa is an orthopedic surgeon who is a fellowship-trained hand specialist.

Dr. Glasgow first examined claimant on February 8, 2001, at which time he diagnosed claimant as suffering from bilateral carpal tunnel syndrome. Dr. Glasgow next saw claimant on February 22, 2001, after which he added to his diagnosis that claimant was also suffering from mild carpometacarpal degenerative joint disease in the left thumb based on a positive grind test to the left thumb. Dr. Glasgow determined that claimant had a compressive neuropathy of the ulnar nerve at the right elbow, which is commonly referred to as cubital tunnel syndrome. Ultimately, Dr. Glasgow recommended carpal tunnel release surgeries to claimant's right and left hands. Claimant underwent a left carpal tunnel release on March 21, 2001, and a right carpal tunnel release on June 13, 2001.

Dr. Glasgow testified that claimant's left and right carpal tunnel conditions both resolved following surgeries, but as of August 13, 2001, claimant continued to have problems with her left hand. Dr. Glasgow recommended surgery to the left carpometacarpal joint and referred claimant to Dr. Baxamusa. Dr. Glasgow opined that there was causal connection between the accident in question and claimant's bilateral carpal tunnel syndrome and her left thumb condition. With regard to the first carpometacarpal joint, Dr. Glasgow specifically stated that the condition was severe. He also stated that claimant's work as a nursing assistant for the number of years she did it at least aggravated the situation, if not caused it.

Dr. Baxamusa examined claimant on August 27, 2001, and found evidence of left thumb basilar joint arthritis, as well as basilar joint arthritis in the right thumb, but to a lesser extent. On December 10, 2001, Dr. Baxamusa performed left thumb basilar joint arthroplasty on claimant. On April 16, 2002, Dr. Baxamusa restricted claimant to lifting no more than 10 pounds and ordered work hardening. On August 2, 2002, Dr. Baxamusa noted that claimant was getting stronger but was now experiencing numbness and tingling in her ring and small fingers. Dr. Baxamusa last examined claimant on August 19, 2002. His examination showed weakness in claimant's ulnar nerve, which is indicative of cubital tunnel syndrome. Claimant later underwent left elbow surgery, which the Commission determined was unrelated to employment. Dr. Baxamusa did not offer an opinion on causal connection with regard to carpal tunnel, but focused on claimant's thumbs. He specifically opined that if claimant was doing a lot of pinching, loading, and gripping with her thumb, those activities would exacerbate basilar joint arthritis.

Dr. John Ruder testified for the employer. He is board certified in plastic surgery, reconstructive surgery, general surgery, and surgery for the hands and upper extremities. He has performed numerous carpal tunnel surgeries in his practice, as well as some surgeries involving the carpometacarpal joint of the thumb. Dr. Ruder examined claimant's medical records and her job duties. He found no causal connection between claimant's carpal tunnel syndrome and her job and no causal connection between her job and her thumb condition. He agreed that no one knew exactly what caused claimant's thumb condition and said that it could have been caused by something as simple as turning a doorknob or pinching a key. On cross-examination, Dr. Ruder admitted that if a person's job involved repetitive lifting of 200-pound patients, then such activities could lead to carpal tunnel syndrome and exacerbation of bilateral joint arthritis. He did not believe that claimant's duties required her to perform the type of repetitive, force-

ful activities necessary to cause carpal tunnel or bilateral joint arthritis.

## ANALYSIS

### I

■ The first issue raised by the employer is whether claimant sustained repetitive trauma injuries to her right and left thumbs arising out of and in the course of her employment. The employer argues that claimant failed to show that her right thumb condition manifested itself on January 24, 2001, the date the Commission found that all of claimant's conditions manifested themselves. Employer points out that no mention was made of an injury to claimant's right thumb until August 29, 2001, when Dr. Baxamusa set forth that there was evidence, to a milder extent, on the right thumb, which was less symptomatic. At that time, Dr. Baxamusa noted a one-year history of basilar thumb pain and crepitus on the left thumb, but made no mention of any complaints of right thumb pain. Employer argues that claimant did not start noticing symptoms in her right thumb until November 29, 2001, and, therefore, the right thumb condition cannot be connected back to claimant's employment, which ended on January 24, 2001.

Employer further argues that because the Commission found January 24, 2001, to be the manifestation date for all of claimant's various conditions, including the right thumb, it was impossible for claimant to provide notice of her right thumb condition, as she did not complain of the condition until August 29, 2001, or have symptoms until November 29, 2001. As to the left thumb, the employer maintains that claimant failed to prove causal connection. Employer insists that the Commission's finding of causal connection between claimant's work activities and her right thumb and her left thumb conditions was against the manifest weight of the evidence and erroneous as a matter of law.

It is the function of the Commission to resolve disputed questions of fact, including those of causal connection, to decide which of the conflicting medical views is to be accepted, and to judge the credibility of the witnesses and draw permissible inferences from the evidence. *Dexheimer v. Industrial Comm'n*, 202 Ill. App. 3d 437, 442, 559 N.E.2d 1034, 1037 (1990). A reviewing court is not to discard the findings of the Commission merely because different inferences could be drawn from the same evidence. *Dexheimer*, 202 Ill. App. 3d at 443, 559 N.E.2d at 1037. The Commission's decision should be set aside only if it is against the manifest weight of the evidence. *Gust K. Newberg Construction v. Industrial Comm'n*, 230 Ill. App. 3d 96, 111, 594

N.E.2d 758, 768 (1992). For a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Dolce v. Industrial Comm'n*, 286 Ill. App. 3d 117, 120, 675 N.E.2d 175, 178 (1996).

Here, claimant worked as a nursing assistant for the employer for over 30 years. She started experiencing pain in her hands and wrists long before she sought treatment at the employer's emergency room. On January 24, 2001, claimant was forced to go to the emergency room because she could no longer button patients' gowns. She gave a history of experiencing pain, numbness, and tingling in both her hands for six or seven months prior to the date in question. Claimant was diagnosed with bilateral carpal tunnel syndrome by Dr. Glasgow. After he started treating claimant, it became apparent to Dr. Glasgow that claimant's condition was more severe.

Dr. Glasgow noted arthritic changes in claimant's left first carpometacarpal joint after X rays were taken on February 8, 2001. On February 22, 2001, Dr. Glasgow performed a more detailed examination and noted a positive grind test at the right first carpometacarpal and carpal tunnel joints. He specifically noted that in addition to carpal tunnel syndrome, claimant was also suffering from mild carpometacarpal degenerative joint disease in the left thumb. Dr. Glasgow found it difficult to discern where all of claimant's pain and dysfunction was coming from. After treating her for bilateral carpal tunnel syndrome by performing releases on both her right and left wrists, Dr. Glasgow referred claimant to Dr. Baxamusa to deal with claimant's carpometacarpal degenerative joint disease.

Dr. Baxamusa first examined claimant on August 27, 2001, at which time he noted a prominent arthritic appearance and positive crepitus in grind testing in claimant's left thumb carpometacarpal metacarpal joint, and noted the same, but to a lesser extent, on the right thumb. We agree with claimant that she should not be denied compensation because the physicians did not immediately recognize the extent of her injuries. It is common for physicians to formulate ongoing and more definitive diagnoses and recommendations after subsequent examinations and treatment.

With regard to the issue of notice, we point out that the purpose of the notice requirement of the Act is to enable an employer to investigate an alleged accident. *Gano Electric Contracting v. Industrial Comm'n*, 260 Ill. App. 3d 92, 95, 631 N.E.2d 724, 727 (1994). The notice requirement is met if the employer possesses known facts related to the accident within 45 days, and a claim is barred only if no notice whatsoever is given. *Gano*, 260 Ill. App. 3d at 96, 631 N.E.2d at 727. Our General Assembly has mandated a liberal construction of the

notice requirement, and, therefore, if some notice has been given, even if inaccurate or defective, the employer must show that it has been unduly prejudiced. *Gano*, 260 Ill. App. 3d at 96, 631 N.E.2d at 727.

In the instant case, claimant went to the employer's emergency room on January 24, 2001, complaining of pain in both of her hands. She filled out an accident report on February 10, 2001, in which she notified the employer that she had been experiencing pain in both her wrists. The Commission determined that claimant gave timely notice. The fact that claimant did not specifically state she was experiencing pain in her thumbs does not mean that she did not give proper notice of her injuries. The employer was in no way prejudiced by claimant's lack of the term "thumb." Claimant was off work as of January 24, 2001, at which time the employer was made aware of the pain in claimant's hands.

As to whether claimant's injuries are the result of a work-related accident arising out of and in the course of her employment, claimant testified that her job required her to engage in heavy and repetitive lifting activities consisting of moving large and immobile patients. Shelly Johnson corroborated claimant's testimony in this regard. Even the employer's expert, Dr. Ruder, agreed that repetitive forceful activities can lead to the onset of basilar joint arthritis. Dr. Baxamusa opined that claimant's basilar joint arthritis may have been exacerbated by her activities as a nursing assistant. Claimant's activities required her to change sheets, assist patients with dressing, including buttoning and unbuttoning gowns, and similar activities that require the pinching and grasping motions that lead to basilar joint arthritis.

Weighing all the evidence, the Commission found a causal connection between claimant's employment and her right and left thumb conditions. Whether an injury arises out of and in the course of a claimant's employment is a question of fact for the Commission. *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 449, 657 N.E.2d 1196, 1199 (1995). The fact that a work-related accident may aggravate or accelerate a preexisting condition does not mean that the employee is not entitled to benefits, so long as the work-related accident was a factor contributing to the disability. *Newberg Construction*, 230 Ill. App. 3d at 111, 594 N.E.2d at 768. The Commission's decisions with regard to the right and left thumbs cannot be said to be against the manifest weight of the evidence.

## II

■ The second issue raised by the employer is whether the Commission erred in overruling its objection to Dr. Glasgow's causation

testimony, which was based upon *Ghere v. Industrial Comm'n*, 278 Ill. App. 3d 840, 663 N.E.2d 1046 (1996), because no report was issued notifying the employer as to what Dr. Glasgow's opinions would be on the issue of causal connection. The employer contends that claimant's attorney's letter notifying the employer's attorney that Dr. Glasgow would render opinions regarding causal connection was too broad.

In *Ghere*, the employee died of a heart attack while working for the employer. The employee's doctor testified that while he treated the employee on several occasions, he never treated the employee for heart problems. The arbitrator sustained the employer's objection to the doctor's testimony regarding whether the employee's work activities or environment could or might have precipitated his heart attack, because the opinions were not furnished to the employer 48 hours prior to the hearing, in violation of section 12 of the Act (820 ILCS 305/12 (West 1994)). On appeal, the *Ghere* court found that the doctor's causation opinion would have gone beyond the contents of his medical records, because there was no mention of causation in the records or that the doctor ever treated the employee for a heart condition. Because there was nothing in the records to put the employer on notice that the doctor had an opinion regarding causation that the employer could have requested, the arbitrator's exclusion of such testimony was upheld. *Ghere*, 278 Ill. App. 3d at 846, 663 N.E.2d at 1046.

Contrary to *Ghere*, in the instant case, Dr. Glasgow's records contain details about his treatment of claimant's bilateral carpal tunnel syndrome and basilar joint arthritis, making the instant case more akin to *Homebrite Ace Hardware v. Industrial Comm'n*, 351 Ill. App. 3d 333, 814 N.E.2d 126 (2004). In *Homebrite*, this court found that the employee's doctor could testify as to causation of the employee's neck injury, even though no medical report was tendered to the employer notifying the employer that the doctor would testify about the issue. We pointed out that, in *Ghere*, the doctor had never treated the employee's heart condition, whereas in *Homebrite*, the doctor did treat the employee for his neck problems and the doctor's records contained details about such treatment and the employee's neck complaints. Accordingly, the records put the employer on notice that the doctor might testify as to a causal relationship between the neck condition and the employee's work accident. *Homebrite*, 351 Ill. App. 3d at 339, 814 N.E.2d at 132.

Likewise, in the instant case, the employer could not have been surprised by Dr. Glasgow's opinions regarding causation, especially in light of the fact that claimant's attorney even provided the employer's attorney with a letter indicating that he intended to inquire into the

issue of causal connection with regard to both the bilateral carpal tunnel and basilar joint arthritis conditions. The fact that Dr. Glasgow did not render an opinion regarding claimant's right thumb condition, even though the letter stated he would, does not change our determination. Relying on *Homebrite,* we find there was no error in allowing Dr. Glasgow to offer opinion testimony regarding causation.

## III

■ The third issue raised by the employer is whether the Commission's finding that claimant's bilateral carpal tunnel condition arose out of and in the course of her employment is against the manifest weight of the evidence or error as a matter of law. The employer argues that Dr. Glasgow's opinion regarding carpal tunnel was not well taken, because Dr. Glasgow did not know the details of claimant's job. The employer asserts that the opinion of Dr. Ruder is more convincing because Dr. Ruder obtained a detailed understanding of claimant's work activities and did not find that her activities were necessarily prolonged, forceful, or repetitive as to cause carpal tunnel syndrome.

Dr. Glasgow testified that claimant's bilateral carpal tunnel syndrome was a direct result of claimant's working as a nursing assistant for a prolonged number of years. He pointed out the repetitive nature of the tasks performed by a nursing assistant. He testified that a nursing assistant would be required to perform numerous pushing and pulling tasks. Dr. Ruder, the employer's own expert, admitted that prolonged use of the hands in a forceful manner, such as would be required to manipulate patients over the course of a 30-year career as a nursing assistant, could cause carpal tunnel syndrome, as evidenced by the following colloquy between Dr. Ruder and claimant's attorney:

"Q. Prolonged, forceful use would include lifting patients, say, in excess of 200 pounds, rotating them, pulling them up out of wheelchairs, or in to beds, using weight belts or straps in order to assist getting patients in and out of bath tubs, those types of activities, couldn't it?

A. It could, yes.

Q. And so prolonged, forceful use of that type in manipulating patients over a course of 30 plus years, might, indeed, lead to the development of carpal-tunnel syndrome?

A. Correct.

Q. And if this particular patient, Lesley Bonney, was engaged in those activities over a period of 30-plus years, in terms of patient manipulation, then she might have been subject to the prolonged, forceful use that you describe in terms of the development of her carpal-tunnel syndrome bilaterally?

A. Yes.

Q. And, therefore, if that were the case, the need for surgery would relate to the prolonged forceful use that gave rise to the symptomatology of the carpal-tunnel syndrome, correct?

A. Correct."

Under these circumstances, we cannot say the Commission's decision is not supported by the evidence.

As previously discussed, it is the Commission's function to resolve disputed questions of fact, including causal connection, and to decide which of the conflicting views should be accepted. Weighing the evidence here, the Commission found a causal connection between claimant's bilateral carpal tunnel syndrome and claimant's employment as a nursing assistant over the course of the previous 30 years. The Commission obviously found claimant's testimony regarding the nature of her job and Shelly Johnson's corroboration of that testimony more credible than Dr. Ruder's testimony regarding the nature of claimant's duties. After reviewing all the evidence, we cannot say the Commission's decision is not supported by the evidence.

## IV

■ The last issue raised by the employer is whether the Commission erred in its award of TTD. The employer argues that, at most, claimant is entitled to TTD benefits only up to August 19, 2002, as it can be inferred from Dr. Baxamusa's testimony that claimant's left thumb condition was resolved to the extent that the weight restriction would have been upgraded to at least 25 pounds, a weight restriction the employer could have accommodated. The employer insists that after that date, claimant was off work due to her left elbow condition, a condition for which the employer is not responsible.

The issues of whether an employee is temporarily totally disabled, as well as the period of such disability, are questions of fact for the Commission, and its decision will not be disturbed on review unless it is against the manifest weight of the evidence. *Sorenson v. Industrial Comm'n*, 281 Ill. App. 3d 373, 384-85, 666 N.E.2d 713, 720-21 (1996). Here, we cannot say the Commission's decision is against the manifest weight of the evidence.

Medical records reveal that claimant was authorized off work as of January 24, 2001, when she was told not to lift over five pounds. Claimant did not return to work after that date, because of increasing symptoms and the continued imposition of weight restrictions. Shelly Johnson, the employer's own employee health nurse, testified that the hospital could not accommodate a 10-pound restriction. Johnson testified that the minimum weight restriction that could be accommodated by the employer is 25 pounds. The employer's contention that as of August 19, 2002, claimant's left thumb condition resolved to the point

that the weight restriction could have been upgraded to 25 pounds is speculative and not based on the record presented here. Accordingly, the Commission's findings with respect to the award of and the length of TTD benefits are not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of De Kalb County is hereby affirmed.

Affirmed.

McCULLOUGH, P.J., and HOFFMAN, CALLUM, and HOLDRIDGE, JJ., concur.