FREEMAN UNITED COAL MINING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION et al. (Lawrence E. Smith, Appellee).

Fourth District (Industrial Commission Division)   No. 4—97—0057WC

Argued September 17, 1997.—Opinion filed July 15, 1998.

Thomas Mark Schmidt, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellant.

Patricia L. Hayes, of Hayes Law Office, of Springfield, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Lawrence Smith (claimant) filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.* (now 820 ILCS Ann. 305/1 *et seq.* (Michie 1993 & Supp. 1998))) alleging that while working for Freeman United Coal Mining Company (employer) he suffered repetitive trauma injuries to his wrist and arm as a result of using a wrench in an awkward position. In his application, the claimant alleged an accident date of August 25, 1992. He subsequently filed a petition for penalties based upon the employer's alleged refusal to pay temporary total disability (TTD) benefits.

Following a hearing, the arbitrator, finding that the claimant had failed to prove an accidental injury and failed to prove a causal connection, denied compensation. The claimant sought review by the Illinois Industrial Commission (Commission), which reversed the arbitrator's findings and determined that March 13, 1992, was the correct accident date. The Commission awarded TTD, medical benefits, and permanent partial disability (PPD) benefits based upon a finding of loss of 20% of the use of the left hand, 15% of the use of the right hand, 30% of the use of the left arm, and 20% of the use of the right arm. In addition, the Commission found that the employer's delay in

paying TTD was unreasonable and vexatious and awarded penalties. The employer then filed a petition for review with the circuit court, which confirmed the decision of the Commission. The employer appeals.

The claimant, a 42-year-old repairman, testified that he began working for employer in 1981 as a laborer. He was laid off in 1982 and was recalled in 1985, only to be laid off again in 1987. From 1987 to 1990 claimant worked as a foreman in construction and did not engage in any manual labor. He was again recalled by employer and returned to work on September 26, 1991. He worked as a laborer until January 14, 1992, at which time he was assigned by the employer to work as a repairman.

The claimant testified that his job duties as a repairman included nut and bolt tightening with a wrench, as well as the turning of small screws with his hands. He also testified that approximately 60% of his daily work involved the use of tools and his hands were often in a flexed or extended position whenever he went about his duties. He also noted that he would use both hands and had to perform fine manipulations during the course of his work.

He first began to notice problems with both his hands around the end of February 1992. He testified that his hands would lock up, go numb, and tighten up. If his hands were clenched, they would not open. He stated that the condition of his hands made it difficult to hold onto his tools. He sought treatment on March 4, 1992, when he visited Dr. Brewer, who in turn referred him to Dr. Trudeau. He was examined by Dr. Trudeau on March 13, 1992, who immediately diagnosed bilateral carpal tunnel syndrome and bilateral cubital tunnel syndrome. Dr. Trudeau speculated that the claimant's condition may have been caused or exacerbated by "overuse syndrome." On that same day, the claimant returned to Dr. Brewer for treatment, based upon Dr. Trudeau's diagnosis.

The following day, the claimant reported for work, spoke to Jankowski, his supervisor, and asked to be allowed to fill out an accident report. He was told to check back with Jankowski the following day, at which time he was told by Jankowski that carpal tunnel "was not a job-related injury and that they were not going to fill out an accident report."

The claimant continued to work with pain in both hands and arms. On August 25, 1992, Dr. Brewer recommended surgery and referred claimant to Dr. Watson. The claimant testified that he then returned to Jankowski and again asked to be permitted to fill out an accident report. Again, his request was denied.

Dr. Watson first examined the claimant on September 9, 1992, at

which time he gave a history of symptoms of pain in his hands and forearms since February 1992, and described his work activities as involving lifting and the twisting and turning of valves and levers. Following his examination and review of medical records, including the tests performed for Dr. Trudeau, Dr. Watson diagnosed bilateral carpal and cubital tunnel syndromes. He prescribed splints and anti-inflammatory medication.

After conservative treatment failed to significantly improve claimant's condition, Dr. Watson recommended surgery. However, employer's group medical insurance carrier determined that claimant had not treated conservatively for a long enough period of time and therefore refused to authorize payment for surgery. Dr. Watson then sought a second opinion from Dr. Mark Greatting, who concurred in the diagnosis and the need for surgery.

The employer then sought an independent medical examination by Dr. Simon Horenstein in January 1993. The claimant sought a copy of Dr. Horenstein's report from the employer, but never received one.

Dr. Watson eventually received authorization from the group health insurance carrier to perform surgery. Surgery on the left hand and elbow was done on March 4, 1993, followed by three weeks of physical therapy. On April 22, 1993, Dr. Watson performed surgery on the right hand and elbow. On June 1, 1993, the claimant was released by Dr. Watson to return to work without restriction. Claimant did not receive any TTD benefits for this period, as he was again told that his injuries were not work related. The claimant testified that since returning to work, he has noted trouble with his elbows and hands.

Dr. Watson opined in an evidence deposition given February 2, 1994, that "[the claimant's] conditions commonly occur from overuse, as an overuse syndrome, using the upper extremities in the work environment. And the type of work that [the claimant] described to me is consistent with a possible cause or aggravating effect for his cubital and carpal tunnel syndrome." Dr. Watson further opined that claimant's condition was "aggravated by the type of work he was doing."

The arbitrator determined that Dr. Watson's opinion as to causation was not based upon sufficient knowledge of the claimant's job duties and therefore held that the claimant had failed to establish the requisite causal connection between his employment and his current condition of ill-being.

The Commission rejected the arbitrator's findings and held that Dr. Watson's opinion as to causation was based upon sufficient knowledge of the claimant's job duties. The Commission also determined that, based upon the claimant's unrebutted testimony and the medical

findings of Dr. Trudeau and Dr. Watson, his injury manifested itself on March 13, 1992 (*i.e.*, the date of Dr. Trudeau's testing and diagnosis). Although the claimant's application for benefits alleged an accident date of August 25, 1992, the Commission, *sua sponte*, found that the accident date was March 13, 1992, citing *Peoria County Belwood Nursing Home v. Industrial Comm'n*, 115 Ill. 2d 524, 531, 505 N.E.2d 1026, 1029 (1987), as authority.

The Commission also determined that employer's refusal to pay TTD was unreasonable and vexatious and awarded additional compensation.

The circuit court confirmed the decision of the Commission, finding that it was not against the manifest weight of the evidence. This appeal followed.

■ The employer first maintains on appeal that the Commission erred, as a matter of law, in *sua sponte* changing the accident date from August 25, 1992, to March 13, 1992. The employer contends that the Commission is in effect "amending" the claimant's application for benefits and cites *Lake State Engineering Co. v. Industrial Comm'n*, 31 Ill. 2d 440, 202 N.E.2d 18 (1964), for the proposition that the Commission cannot "amend" the application because to do so would be after the statutory three-year period for filing claims. The claimant maintains the employer is reading *Lake State* too expansively and that it is the province of the Commission to determine the date of the accident in a repetitive trauma case. As such, the Commission is free to assign a new accident date to timely filed applications, so long as its determination of an accident date is not contrary to the manifest weight of the evidence. See *General Electric Co. v. Industrial Comm'n*, 190 Ill. App. 3d 847, 855, 546 N.E.2d 987, 992 (1989).

We hold that *Lake State* is distinguishable from the instant matter. In *Lake State* the claimant injured his back on July 15, 1959, in Chicago, Illinois. The claimant subsequently aggravated that injury in a second accident on February 12, 1960, while working in Muncie, Indiana. Although he had two separate accidents, the claimant filed only one application for adjustment of claim, alleging only the July 15, 1959 injury. On February 12, 1961, the statutory period for filing an application for adjustment of claim for the Muncie accident expired without the claimant having filed an application. On March 21, 1961, the claimant filed an amended application for adjustment of claim seeking to change the date of accident to the date of the Muncie accident. Our supreme court held that the second occurrence was "a new injury," which arose "out of a wholly different accident" and as such was barred by the applicable statute of limitations. *Lake State*, 31 Ill. 2d at 446, 202 N.E.2d at 21. Thus in *Lake State*, unlike the instant matter, two separate and distinct accidents occurred.

The matter herein is similar to *McLean Trucking Co. v. Industrial Comm'n*, 96 Ill. 2d 213, 449 N.E.2d 832 (1983), where the Commission allowed claimant to amend his application for adjustment of claim to conform to the evidence adduced at hearing. *McLean Trucking*, 96 Ill. 2d at 218-19, 449 N.E.2d at 834-35. The *McLean* court distinguished its holding from *Lake State* by noting that *Lake State* involved a statute of limitations argument. Claimant maintains that *McLean* should control our decision in the instant matter. However, since the instant matter requires us to determine whether the Commission may *sua sponte* amend the application for adjustment of claim in a manner involving the statute of limitations, we find that both *Lake State* and *McLean* are distinguishable from the instant matter and neither controls our decision.

*McLean* stands for the proposition that the Commission can permit the application for adjustment of claim to be liberally amended to conform to the proofs contained in the record before the Commission, as well as the proposition that the date of the accident can be changed to conform to those same proofs. Unlike *Lake State*, the amending of this application does not involve a new injury arising out of a wholly different accident. Rather, the instant matter simply involves establishing the correct date of accident in a single accidental injury. To that extent, this matter is more akin to the situation in *McLean Trucking*, where the Commission allowed the amendment to conform the application to the proof. We hold, therefore, that the Commission did not err finding a different date of accident from that alleged in the application.

■ The employer next contends that the Commission's decision to amend the date of the accident deprived it of due process. We disagree. Due process of law requires that all parties, in proceedings before administrative agencies, have an opportunity to cross-examine witnesses and to offer evidence in rebuttal. *Paoletti v. Industrial Comm'n*, 279 Ill. App. 3d 988, 998, 665 N.E.2d 507, 513 (1996). In the matter *sub judice*, the employer was given a complete opportunity to examine witnesses and offer evidence concerning the repetitive nature of claimant's injuries. The employer has not established that it was prejudiced by the Commission's decision finding a different date for the onset of claimant's injuries.

■ The employer next contends that the Commission's award of PPD benefits exceeded the statutory maximum. Based upon our review of the record, we agree. We also note that the claimant did not challenge this contention, but instead argued that the employer waived the issue by failing to file a motion to correct the award pursuant to section 19(f) of the Act (see 820 ILCS Ann. 305/19(f) (Michie 1993)).

This argument lacks merit as the issue of exceeding the maximum rate is not waivable. See *Organic Waste Systems v. Industrial Comm'n*, 241 Ill. App. 3d 257, 261, 608 N.E.2d 1243, 1246 (1993). We vacate the award of PPD in excess of the statutory maximum and remand to the Commission for it to issue an order consistent with our finding.

■ Last, the employer maintains that the Commission erred as a matter of law in awarding penalties and attorney fees when the arbitrator did not award TTD benefits. The Commission can award penalties and fees regardless of the arbitrator's ruling. See *McMahan v. Industrial Comm'n*, 289 Ill. App. 3d 1090, 1093, 683 N.E.2d 460, 463 (1997).

Based upon the foregoing, we reverse the circuit court's order on the issue of PPD benefits and remand to the Commission for reconsideration of that issue. We affirm the remainder of that order.

Affirmed in part; reversed in part and remanded.

McCULLOUGH, P.J., and RAKOWSKI, COLWELL, and RARICK, JJ., concur.