UNIVERSITY OF ILLINOIS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Nadine Burnes, Appellee).

First District (Illinois Workers' Compensation Commission Division)
No. 1—05—2550WC

Opinion filed May 3, 2006.

Nyhan, Pfister, Bambrick, Kinzie & Lowry, of Chicago (C. Freeman, of counsel), for appellant.

Cullen, Haskins, Nicholson & Menchetti, of Chicago (Jose M. Rivero, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The University of Illinois (University) appeals from a decision of the circuit court of Cook County that confirmed a decision of the Industrial Commission (Commission)[1] awarding benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)) to Nadine Burnes, the claimant. For the reasons that follow, we affirm.

The following factual recitation is taken from the evidence presented at the arbitration hearing.

In August of 1999, the claimant suffered from internal derangement of the right knee with a torn medial meniscus and underwent arthroscopic surgery, consisting of a partial meniscesctimy and a partial synovectomy. The records of Dr. Upendra Patel, the surgeon who performed the August 1999 surgery, reflect that, as of September 13, 1999, the claimant's surgical wound had healed well and that she was "doing much better." Dr. Patel's progress note states that he advised progressive activity but no kneeling.

In approximately October 1999, the claimant was employed by the University as a nurse-midwife. On October 10, 2000, the claimant was seen by Dr. Keith R. Pitchford, complaining of increasing pain in her

---

[1]Effective January 1, 2005, the name of the Industrial Commission was changed to the "Illinois Workers' Compensation Commission." However, because the Industrial Commission was named as such when the instant cause was originally filed, we will use this name for purposes of consistency.

left knee. Dr. Pitchford's note of that visit indicates that an MRI of the claimant's left knee revealed a posterior medial meniscus tear. Dr. Pitchford recommended arthroscopic surgery to repair the tear. On October 12, 2000, the claimant underwent arthroscopic surgery on her left knee, consisting of a partial miniscesctimy and a synovectomy. She returned to work in November 2000.

The claimant testified that, on December 18, 2000, at approximately 8:30 a.m., she parked her car on the third floor of the University's parking structure in an area designated for employees. She exited her vehicle carrying her purse, a bag containing three books, and a Crock-Pot of food for a mandatory monthly midwife service meeting she was to attend. The claimant testified that she proceeded toward a walkway that passed over the street and connected the third floor of the parking structure with the second floor of the outpatient care facility of the University's hospital. According to the claimant, as she passed through the doorway between the parking structure and the walkway, she tripped on a metal threshold and twisted her right knee. The claimant described the object on which she tripped as a metal strip approximately 12 inches wide which "goes up on an angle" and is about 3 inches high in the middle. She stated that she felt pain instantly. Nevertheless, the claimant went to the scheduled midwife meeting. She testified that, while she was at the meeting, she placed ice on her knee and kept her leg elevated. At approximately 12 p.m., the claimant left the meeting early and went to the University's hospital emergency room.

The records of the claimant's emergency room visit were received in evidence. Karen Harrer, a triage nurse, recorded a history stating that the claimant complained "of low back pain and right medial/posterior knee pain after slipping on ice today." The claimant, however, denied having told Harrer that she slipped on ice. A handwritten note contained within the emergency room records states that the claimant tripped coming to the "OCC" building and twisted her right knee and back.

At approximately 1:30 p.m. on December 18, 2000, while the claimant was still in the emergency room, she reported the incident to a University police officer. The officer's report states that, as the claimant "was walking from the D-1 parking structure into the 948 Building 2nd floor walkway[,] *** [s]he tripped over the metal floor plate with the door that separates D-1 and the 948 walkway." The report also states that the claimant did not fall but, rather, twisted her right knee. The officer noted that he inspected the accident scene and found no abnormality in the area of the doorway.

While the claimant was at the emergency room, X rays were taken

of her right knee which showed early osteoarthritic changes but no evidence of a fracture. According to the emergency room records, the claimant was diagnosed with a low back strain and a knee injury. She was given Tylenol, advised to call for a follow-up appointment, and discharged.

Two or three days after the incident, the claimant sought follow-up care with her family physician, Dr. Michael Foreit. Dr. Foreit commenced a course of conservative treatment, consisting of pain medication and rest. She visited Dr. Foreit four or five times before he referred her to Dr. Pitchford.

Dr. Pitchford ordered an MRI of the claimant's right knee which was performed on April 4, 2001. A report of that scan suggests a "complex tear involving the medial attachment of the posterior horn of the medial meniscus," a complete tear of the anterior cruciate ligament, and a small to moderate amount of joint effusion.

When the claimant visited Dr. Pitchford on April 17, 2001, she complained of pain in her right knee. Dr. Pitchford diagnosed a medial meniscus tear and recommended physical therapy.

Dr. Pitchford's record of the claimant's visit on May 18, 2001, states that she had been experiencing pain in her right knee since she injured it at work. He noted that the claimant was starting to have "tenderness" laterally which she did not have before. According to the report, the claimant had "patellofemoral symptoms." Dr. Pitchford recommended arthroscopy and a home exercise program.

On September 13, 2001, the claimant underwent arthroscopic surgery on her right knee, consisting of a partial synovectomy with a medial meniscus repair and a debridement of the "ACL." Following the surgery, the claimant remained off of work until November 5, 2001, when she returned to her duties as a nurse-midwife. At the arbitration hearing, the claimant testified that she saw Dr. Pitchford periodically following her surgery; the last time being November 26, 2001.

The claimant testified that, from the time that she last saw Dr. Patel on September 13, 1999, until December 18, 2000, she "didn't have any problems" with her right knee. On July 17, 2003, the date of the arbitration hearing, the claimant stated that her right knee and leg get stiff when she sits for prolonged periods of time, she experiences pain after working longer than eight hours or standing in certain positions, and she has swelling and pain after exercise. She admitted, however, that she had not sought or received treatment for her right knee since she last saw Dr. Pitchford on November 26, 2001.

Following the hearing, the arbitrator issued a decision denying the claimant benefits under the Act, finding both that she failed to prove

that she sustained accidental injuries on December 18, 2000, arising out of and in the scope of her employment with the University and that her current condition of ill-being is not causally related to the injuries she sustained on December 18, 2000.

The claimant filed a petition for review of the arbitrator's decision before the Commission. In a unanimous decision, the Commission reversed the arbitrator and found that the claimant sustained accidental injuries arising out of and in the course of her employment with the University on December 18, 2000, and that those accidental injuries are causally related to her current condition of ill-being. The Commission awarded the claimant temporary total disability benefits for a period of 7⁴/7 weeks, permanent partial disability benefits for a period of 50 weeks by reason of the 25% loss of use of her right leg, and ordered the University to pay $16,586.63 for medical expenses incurred by the claimant.

The University filed a petition for judicial review of the Commission's decision in the circuit court of Cook County. The circuit court confirmed the Commission's decision, and this appeal followed.

For its first assignment of error, the University argues that the Commission's finding that the claimant sustained accidental injuries arising out of her employment on December 18, 2000, is against the manifest weight of the evidence. It asserts that, at the time of her injury, the claimant was not exposed to a risk greater than that to which the general public was exposed.

■ An employee's injury is compensable under the Act only if it arises out of and in the course of the employment. 820 ILCS 305/2 (West 2000). Both elements must be present at the time of the claimant's injury in order to justify compensation. *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483, 546 N.E.2d 603 (1989). In this case, the University admits in its brief that injuries sustained while walking to one's place of employment from an attached garage are sustained in the course of the employment. Its argument addresses the "arising out of" component.

Whether an injury arose out of a claimant's employment is a question of fact to be resolved by the Commission and its finding in this regard will not be set aside on review unless it is against the manifest weight of the evidence. *Knox County YMCA v. Industrial Comm'n*, 311 Ill. App. 3d 880, 885, 725 N.E.2d 759 (2000). For a finding of fact to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

■ Arising out of the employment refers to the origin or cause of a claimant's injury. As the Supreme Court held in *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58, 541 N.E.2d 665 (1989):

"For an injury to 'arise out of' the employment its origin must be in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury. [Citations.] Typically, an injury arises out of one's employment if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts which he had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties. [Citation.] A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his duties. [Citations.]"

In addition, an injury arises out of the employment if the claimant was exposed to a risk of harm beyond that to which the general public is exposed. *Brady v. L. Ruffolo & Sons Construction Co.*, 143 Ill. 2d 542, 548, 578 N.E.2d 921 (1991).

The claimant testified that, immediately prior to her injury, she parked her vehicle in the University's parking structure in an area designated for employees. However, contrary to the Commission's finding, there is no evidence in the record that the claimant was ordered to park in that particular area of the structure. This fact distinguishes this case from the facts present in *Homerding v. Industrial Comm'n*, 327 Ill. App. 3d 1050, 765 N.E.2d 1064 (2002). However, this case does not merely involve the risks inherent in walking across a threshold as the University asserts.

■ The claimant testified that she tripped on a metal strip approximately 12 inches wide and about 3 inches high located in the doorway of the walkway connecting the third floor of the University's parking structure with the second floor of the hospital's outpatient care facility. The University contends, however, that the claimant's testimony in this regard lacks credibility and is contradicted by Harrer, who testified in support of the emergency room record, stating that the claimant reported that she slipped on ice, and the University police officer who reported that he found no abnormality in the area where the claimant stated that she tripped.

It is the function of the Commission to judge the credibility of witnesses and resolve conflicting evidence. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221 (1980). The Commission found that the claimant tripped over the metal strip as she testified and that the height of the strip constituted a hazardous condition. Contrary to the University's assertion, we do not find the claimant's testimony so patently unbelievable that the Commission's reliance thereon is clearly erroneous. The claimant's version of the events leading to her injury, although contradicted by the entry in the emergency room record

made by Harrer, is consistent with the history she gave to the police officer at approximately the same time. Additionally, with the exception of the history recorded by Harrer, there is nothing contained within any of the claimant's other medical records which is inconsistent with her testimony concerning the cause of her fall.

The walkway where the claimant was injured connects the third floor of the University's parking structure where the claimant parked in an area designated for employees and the second floor of the hospital's outpatient care facility. The Commission could reasonably infer, therefore, that the walkway was a usual access route from the area of the parking facility designated for employees and the hospital.

When, as in this case, an injury to an employee arriving for work takes place in an area of the employer's premises which constitutes a usual access route for employees and is caused by some special risk or hazard located thereon, the "arising out of" requirement of the Act is satisfied. *Litchfield Healthcare Center v. Industrial Comm'n*, 349 Ill. App. 3d 486, 491, 812 N.E.2d 401 (2004). We conclude, therefore, that the Commission's finding that the claimant sustained accidental injuries arising out of and in the course of her employment with the University on December 18, 2000, is not against the manifest weight of the evidence.

Next, the University argues that the Commission's finding that the accidental injuries sustained by the claimant on December 18, 2000, are causally related to her current condition of ill-being is against the manifest weight of the evidence. According to the University, the claimant's preexisting right knee condition and her failure to support her claim with any expert medical causation testimony "clearly shows that *** [she] has not met her burden of proving a causal relationship between her alleged accident and her condition of ill-being." We disagree.

■ A claimant's testimony standing alone may be sufficient to support an award of benefits under the Act. *Seiber v. Industrial Comm'n*, 82 Ill. 2d 87, 97, 411 N.E.2d 249 (1980). Medical testimony is not essential to support the conclusion that an accident caused a claimant's condition of ill-being. *International Harvester v. Industrial Comm'n*, 93 Ill. 2d 59, 63, 442 N.E.2d 908 (1982). Circumstantial evidence can be sufficient to prove a causal nexus between an accident and the claimant's injury. *Gano Electric Contracting v. Industrial Comm'n*, 260 Ill. App. 3d 92, 96-97, 631 N.E.2d 724 (1994).

As the University correctly notes, the record reflects that the claimant had a preexisting right knee injury which necessitated surgery in August 1999, and that she suffered from osteoarthritic changes in the knee. Nevertheless, the claimant testified that she had

no "problems" with her knee from the time that she last saw Dr. Patel on September 13, 1999, and the date of her accident on December 18, 2000. She stated that, at the time that she began working for the University, she was not experiencing any stiffness or pain in her right knee. Further, Dr. Patel's September 13, 1999, note states that the claimant's surgical wound had healed and she was doing much better. Nothing in the record suggests that the claimant was being treated for any right knee condition from the date that she last saw Dr. Patel and the date of the accident which is the subject of this case, a period of 15 months. The record also reflects a continuous course of treatment from the date of the claimant's accident on December 18, 2000, until November 26, 2001, including arthroscopic surgery on her right knee on September 13, 2001.

■ When the University hired the claimant, it took her as it found her. *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187, 199, 775 N.E.2d 908 (2002). The fact that the claimant had a preexisting right knee condition does not mandate the conclusion that her preexisting condition was the sole cause of her current condition of ill-being, especially in light of the fact that the University offered no expert medical evidence in support of such a conclusion.

Whether a causal connection exists between a claimant's condition of ill-being and her work-related accident is a question of fact to be resolved by the Commission, and its resolution of the matter will not be disturbed on review unless it is against the manifest weight of the evidence. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 205-06, 797 N.E.2d 665 (2003). In this case, the claimant's testimony and the records of her medical treatment provide sufficient circumstantial evidence to support the Commission's conclusion that her current condition of ill-being is causally related to her accident on December 18, 2000. Consequently, we cannot find that the Commission's holding in this regard is against the manifest weight of the evidence.

For the foregoing reasons, we affirm the judgment of the circuit court which confirmed the Commission's decision awarding the claimant benefits under the Act.

Affirmed.

McCULLOUGH, P.J., and CALLUM, HOLDRIDGE, and GOLDENHERSH, JJ., concur.