# Illinois Official Reports

## Appellate Court

*RG Construction Services v. Illinois Workers' Compensation Comm'n*,
2014 IL App (1st) 132137WC

| | |
|---|---|
| Appellate Court Caption | RG CONSTRUCTION SERVICES, Plaintiff-Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Alfredo Martinez, Appellee). |
| District & No. | First District, Workers' Compensation Commission Division<br>Docket No. 1-13-2137WC |
| Filed<br>Rehearing denied | December 31, 2014<br>February 3, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-51429; the Hon. Robert Lopez-Cepero, Judge, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | Julie A. Garrison, of Maciorowski, Sackmann, & Ulrich, of Chicago, for appellant.<br><br>Richard Aleksy, of Law Offices of Corti and Aleksy, of Chicago, for appellee. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.

Presiding Justice Holdridge and Justices Hoffman, Hudson, and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1     On June 12, 2009, claimant, Alfredo Martinez, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 to 30 (West 2008)), seeking benefits from the employer, RG Construction Services, for alleged work-related injuries to both knees. Following a hearing, the arbitrator determined claimant sustained injuries arising out of and in the course of his employment on December 15, 2008, to only his right knee and awarded him (1) $107^4/_7$ weeks' temporary total disability (TTD) benefits and (2) medical expenses associated with claimant's right knee/leg condition. Additionally, the arbitrator rejected the employer's contention that its fourteenth amendment (U.S. Const., amend. XIV) due process rights were violated by the admission of medical records that contained the medical opinions of two of claimant's treating physicians.

¶ 2     On review, the Illinois Workers' Compensation Commission (Commission) modified the arbitrator's award, finding claimant injured both knees at work on December 15, 2008, and the current condition of ill-being in claimant's left knee was also causally connected to his work accident. The Commission determined claimant was entitled to (1) prospective medical expenses for the left knee arthroscopic surgery recommended by one of claimant's doctors, (2) an additional $17^3/_7$ weeks' TTD benefits, and (3) outstanding medical expenses related to both his left and right knees. Although in agreement with the arbitrator's rejection of the employer's due process argument, the Commission further addressed the issue, finding no due process violation and stating claimant's medical records were properly admitted at arbitration pursuant to section 16 of the Act (820 ILCS 305/16 (West 2008)). The Commission otherwise affirmed and adopted the arbitrator's decision. It also remanded the matter to the arbitrator for further proceedings pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 399 N.E.2d 1322 (1980).

¶ 3     On judicial review, the circuit court of Cook County confirmed the Commission's decision. The employer appeals, arguing (1) it was denied its due process right to cross-examine witnesses and present rebuttal evidence by the admission into evidence of claimant's medical records, which contained the opinions of two of claimant's treating physicians; (2) the Commission's finding that claimant's left knee condition of ill-being was causally connected to his December 2008 work accident was against the manifest weight of the evidence; (3) the Commission's TTD award was against the manifest weight of the evidence; and (4) the Commission's award of medical expenses was against the manifest weight of the evidence. We affirm.

¶ 4                           I. BACKGROUND

¶ 5     On October 18, 2011, an arbitration hearing was conducted in the matter. Prior to the presentation of evidence, the employer asked that the matter not proceed with a hearing on that day. It asserted that, pursuant to the fourteenth amendment to the U.S. Constitution (U.S. Const., amend. XIV), it was entitled to cross-examine two of claimant's treating physicians,

orthopedic specialists Dr. Ellis Nam and Dr. Ronald Silver, with respect to opinions contained in their medical records, which claimant wanted to have admitted into evidence.

¶ 6    With respect to the employer's due process argument, the arbitrator stated as follows:

"We had a long discussion about this before we went on the record here. We talked about it. I offered the compromise of allowing [the employer's counsel] to–I thought at that time it was just Dr. Silver's deposition, but now we have Dr. Nam's and Dr. Silver's. But I would be willing to allow a continuance here, but I had asked since it was at the [employer's] request and given that [claimant] is here and they have also rights and they also have fully conformed with the Statute with respect to the Section 19(b) request for immediate hearing, I had requested that [the employer] pay for the deposition ***. [The employer's counsel] *** has indicated he didn't feel it's his obligation to pay for the deposition of the treating witness.

It's my opinion we have certain provisions under the Act, this is an administrative agency, it's supposed to be simple and summary proceedings. This is the second setting for this case for an individual who has properly filed a motion for immediate hearing. I offered the opportunity to take this deposition, but I felt it only fair that the [employer] pay for it since I think under the Act the only thing that [claimant] needs to do is have a certified record or have these records via subpoena which I understand [he has] adhered to those requirements."

The arbitrator noted the employer declined his offer and he would allow the matter to proceed. He further stated he did not believe the employer's fourteenth amendment rights were being impinged, noting the employer would have the ability to provide rebuttal evidence in the form of reports from its examining physicians.

¶ 7    The matter next proceeded with the arbitration hearing and the record reflects the parties agreed claimant sustained accidental injuries that arose out of and in the course of his employment on December 15, 2008. Claimant, who testified with the aid of an interpreter, stated he worked for the employer as a drywall finisher. On the date of his accident, he was performing his work on stilts, which were affixed to his feet and lifted him approximately four feet off the ground. While on the stilts, claimant stepped on a pipe or piece of trash and slipped and fell. He testified he struck the ground with both of his knees and his right shoulder.

¶ 8    Claimant testified he reported his accident and, the following day, the employer sent him to Concentra Medical Center (Concentra). Medical records reflect claimant was seen at Concentra on December 16, 2008. He reported falling at work from a height of five feet, "hit[ting] his knees," and "hurt[ing] [his] right shoulder and right knee." Records note claimant described mild pain in his shoulders but that his prominent pain was in his right knee. He underwent an X-ray of the right knee and was diagnosed with a knee contusion and shoulder pain. Claimant was given ibuprofen and modified activity restrictions of no prolonged standing or walking longer than tolerated, no climbing stairs or ladders, no squatting, and no kneeling. He returned to work for the employer in a light-duty capacity. Claimant continued to follow up at Concentra and, pursuant to recommendation, underwent physical therapy.

¶ 9    On December 22, 2008, Concentra records reflect claimant was progressing with therapy and reported "resolution of symptoms and restoration of pre-injury status." On January 2, 2009, records show claimant reported improvement but that he had "persiste[nt] pain of the medial side of the knee which [was] worse and severe with crossing [his] leg and walking." Claimant described his pain as moderate and aching and stated it radiated to his right thigh. He

was again assessed as having a knee contusion and given modified activity restrictions of no prolonged standing or walking for longer than tolerated. A magnetic resonance imaging (MRI) was recommended. On January 20, 2009, an MRI was performed on claimant's right knee, which showed "[s]oft tissue edema at the infrapatellar fat pad with suggestion of calcification or possibly foreign body at the inferomedial aspect of the infrapatellar fat pad."

¶ 10    At a follow-up appointment on January 27, 2009, claimant reported his symptoms were the same and denied any knee pain or problem prior to his work accident. His doctor encouraged him to increase his activity level progressively but continued claimant's modified activity restrictions. He also referred claimant to an orthopedic surgeon.

¶ 11    On February 11, 2009, claimant returned to Concentra and saw Dr. James Cohen. Dr. Cohen recorded claimant's accident history as walking on stilts at work and falling "directly onto both knees." He noted claimant reported pain "at the anterior aspect of his knees" and that claimant had recently been laid off by the employer. Dr. Cohen examined both of claimant's knees and reviewed his X-ray and MRI, the latter of which he found to be "essentially normal except for some edema in the patellar tendon fat pad area." His impression was that claimant "had a contusion to both knees and *** some mild chondromalacia patella." Dr. Cohen released claimant to return to full-duty work and recommended ibuprofen. Claimant testified he did not return to work because he had been laid off. He described his condition at that time, stating both of his knees "were hurting *** a lot." He asserted he could not go up stairs because he experienced too much pain and his knees hurt more at night.

¶ 12    Claimant testified he did not seek medical treatment again until June 13, 2009, when he began seeing Dr. Nam. Then, beginning November 24, 2009, he sought treatment from Dr. Silver. At arbitration, claimant sought to admit exhibits containing both doctors' medical records. The record reflects the employer objected, raising the same arguments it raised at the outset of the arbitration hearing regarding its inability to cross-examine either doctor with respect to medical opinions contained within those records. The arbitrator overruled the employer's objections and the doctors' medical records were admitted into evidence.

¶ 13    Dr. Nam's records reflect he saw claimant on June 13, 2009, for a chief complaint of right knee pain. Claimant reported he fell onto his right knee at work in December 2008, and experienced persistent pain on a daily basis. Dr. Nam noted that, although he did not have the report from claimant's January 2009 MRI and the MRI was poor in quality, he did feel claimant had "evidence of abnormal medial meniscus." His impression was "[r]ight knee rule out medial meniscus tear." Dr. Nam stated claimant needed a better imaging study. He recommended an MRI arthrogram of claimant's right knee. Dr. Nam also determined claimant was unable to work "until further notice." On August 15, 2009, claimant underwent an MRI arthrogram.

¶ 14    On August 22, 2009, claimant returned to Dr. Nam, who noted claimant continued to have persistent pain in his right knee "with some catching and giving away symptoms." Dr. Nam stated he reviewed claimant's August 2009 MRI and noted as follows:

> "As I pointed out to [claimant], he does have abnormal appearance of the medial meniscus and I am not sure if this represents a true medial meniscus tear. He also has some abnormal appearance of patellofemoral joint representing a possible chondral lesion of the patellofemoral joint."

Dr. Nam's impression was "[r]ight knee possible medial meniscus tear with possible chondral lesion of the patellofemoral joint." He discussed his findings with claimant, whom he noted

- 4 -

was "still having persistent pain despite physical therapy." Claimant and Dr. Nam discussed nonoperative management but elected to proceed with surgery. Dr. Nam recommended "a right knee arthroscopy, possible partial medial meniscectomy, and possible chondroplasty/abrasion arthroplasty." Further, he continued claimant's work restrictions.

¶ 15    The exhibit containing Dr. Nam's medical records also contains a letter dated October 5, 2009, which was authored by Dr. Nam and directed to "To Whom It May Concern." In the letter, Dr. Nam summarized his contact with claimant and additionally stated as follows:

"To a reasonable degree of medical and surgical certainty, although I did not treat nor see [claimant] from January 27, 2009[,] up until June 13, 2009, given that [claimant] was suffering from the same magnitude of pain involving his right knee secondary to his injury from December 2008, I do feel that [claimant] would have not been able to work in a full duty capacity at that time."

¶ 16    On November 24, 2009, claimant began seeing Dr. Silver, who documented each one of claimant's visits in the form of a letter directed to the attention of Steven Borgstrom at "Employers Claim Services." In the letter dated November 24, 2009, Dr. Silver noted claimant was injured "when he fell off stilts while doing dry walling [in December 2008,] injuring both knees." He stated claimant's right knee was "much worse" and "[t]he left one ha[d] recovered." Dr. Silver noted upon examination that claimant had "patellofemoral crepitation and medial joint line tenderness." His impression was that claimant had "damaged the articular cartilage of the patella due to his work injury and ha[d] a loose body in the right knee due to the *** work injury." Dr. Silver recommended arthroscopic surgery "[b]ecause of claimant's persistent symptoms of almost one years [sic] time." He stated he believed claimant was temporarily disabled. Dr. Silver's records show he took claimant off work pending surgery.

¶ 17    On August 10, 2010, claimant was examined by Dr. Charles Bush-Joseph at the request of both parties. Claimant reported falling on December 15, 2008, while wearing stilts and "suffering injuries to his back, both knees, [and] left shoulder and arm region." Dr. Bush-Joseph noted: "Apparently all symptoms have resolved except for residual pain of the right knee. He clearly, on repeated questioning stated that he had no residual symptoms of his back, left knee[,] or left arm and shoulder." Following an examination and review of claimant's medical records and previous diagnostic tests, Dr. Bush-Joseph's impression was "[r]esidual patellofemoral contusion, possible chondral injury with possible medial meniscal tear, right knee." He opined claimant suffered a work-related injury to his right knee in December 2008 with residual symptoms that warranted further treatment. Dr. Bush-Joseph found "[i]njuries to [claimant's] left shoulder and left knee ha[d] resolved with no residual." He further believed, "given the length and duration of symptoms," diagnostic arthroscopy was warranted. Finally, he stated as follows:

"I believe that based on the initial reports of Dr. *** Cohen and current physical examination findings, [claimant] was most likely able to work on a full-duty basis with only limitations of kneeling in the interval. Certainly, his current examination would allow such work tolerance."

¶ 18    On November 13, 2010, approximately one year after their first meeting, Dr. Silver performed surgery on claimant's right knee in the form of an arthroscopic partial lateral meniscectomy and arthroscopic debridement. Surgical records reflect claimant's postoperative diagnoses were a "[t]orn lateral meniscus" and "[a]rticular cartilage fragmentation of the patellofemoral joint and medial femoral condyle." On November 23, 2010, Dr. Silver

prescribed claimant physical therapy three times a week for 12 to 16 weeks. He also restricted claimant from working.

¶ 19    After his surgery, claimant underwent physical therapy and continued to follow up with Dr. Silver. He testified he also began to notice pain in his left knee. An initial physical therapy evaluation report, dated November 30, 2010, shows claimant provided a history of his work accident, stating "he was at work on stilts when he fell, landing directly on both knees." In addition to right knee symptoms, claimant complained "of left knee pain which he relate[d] to overuse since the time of injury."

¶ 20    In a letter directed to Borgstrom and dated December 21, 2010, Dr. Silver noted claimant "continue[d] to improve with regard to his right knee after arthroscopic surgery." However, he stated claimant's left knee was "deteriorating with medial joint line pain and peripatellar pain." Dr. Silver noted claimant also injured his left knee as a result of his December 2008, work accident and recommended an MRI of the left knee. He recommended claimant continue with physical therapy for his right knee and limited him "to sedentary work only."

¶ 21    On January 6, 2011, claimant underwent an MRI of his left knee, which revealed as follows:

> "1. A small joint effusion.
>
> 2. Large horizontal tear involving the midbody and posterior horn of the medial meniscus.
>
> 3. Intact lateral meniscus, collateral and cruciate ligaments."

In a letter to Borgstrom dated January 22, 2011, Dr. Silver stated claimant's right knee continued to improve and his left knee MRI demonstrated what appeared to be a torn meniscus. He recommended left knee arthroscopic surgery once claimant's right knee had recovered. Dr. Silver continued claimant's work restrictions.

¶ 22    On January 25, 2011, Dr. Silver authored a letter to Borgstrom's attention, stating claimant's MRI demonstrated a large tear of the medial meniscus, which was "due to his work injury of [December 2008]." He further stated as follows:

> "As you know [claimant] injured both of his knees at that time. The right one was initially mores [sic] severely painful and underwent arthroscopic surgery and slowly the left knee pain has persisted to the point where he can no longer tolerate it. He will require arthroscopic surgery of his left knee."

On February 22, 2011, Dr. Silver authored a letter directed to Borgstrom's attention. He reiterated claimant's need for left knee surgery and stated claimant was limited to sedentary work with occasional walking and standing.

¶ 23    Claimant continued to follow up with Dr. Silver while awaiting approval for surgery. Dr. Silver continuously noted improvement in claimant's right knee. He also recommended continued physical therapy for claimant's right knee, surgery for claimant's left knee, and that claimant remain off work. In a letter dated March 24, 2011, Dr. Silver stated claimant was temporarily disabled "[b]ecause of the tearing situation with regard to his left knee." Further, he consistently reiterated his belief that claimant's left knee condition was connected to his December 2008, work accident. On October 6, 2011, Dr. Silver authored a final letter directed to Borgstrom, stating as follows:

> "We are still awaiting approval for [claimant's] arthroscopic surgery of his left knee related to his work injury of December *** 2008[,] when he injured both knees

causing torn medial meniscus in the left knee. Lacking appropriate arthroscopic surgery he will be permanently disabled."

¶ 24    On June 23, 2011, claimant was evaluated by Dr. Troy Karlsson at the employer's request. The employer submitted Dr. Karlsson's report, dated June 28, 2011, into evidence at arbitration. That report shows claimant provided a history of falling on stilts at work and "landing onto both knees, more so on the right than the left." Claimant reported having some pain in his left knee initially but that his left knee pain "got much worse after [his] right knee surgery when he favored that leg somewhat." He stated physical therapy made his left knee worse. Dr. Karlsson's report states claimant reported "no problems with the right knee at present" but that he complained of swelling in his left knee and pain "around the kneecap as well as medially." Claimant asserted his pain increased with walking or physical therapy.

¶ 25    Dr. Karlsson diagnosed claimant with right knee osteoarthritis, lateral meniscal tear, and chondral fissuring. He determined claimant's left knee had a medial meniscal tear that was degenerative in nature. Dr. Karlsson opined that "at least a portion" of claimant's right knee problems were caused by his work accident and his right knee arthroscopic surgery was also "related to the occurrence of December 15, 2008." However, he did not believe the condition of ill-being in claimant's left knee "to be in any way related to that single fall." In particular, Dr. Karlsson noted claimant initially complained only of symptoms in his right knee and made no left knee complaints. Additionally, he noted claimant expressly denied experiencing any symptoms in his left knee to Dr. Bush-Joseph in August 2010. Dr. Karlsson found there was "simply too wide a period of symptom-free times with the left knee and normal exams of the left knee to relate it to" claimant's work accident. Rather, he opined claimant likely had "a degenerative tear of the medial meniscus in his left knee, unrelated to his action of December 15, 2008."

¶ 26    Dr. Karlsson further opined claimant was at maximum medical improvement (MMI) and could return to regular-duty work. He stated he would not recommend any restrictions for claimant whatsoever "other than times he may need off following arthroscopy of the left knee which is unrelated to the work injury."

¶ 27    Claimant testified that after Dr. Nam restricted him from working in June 2009, no doctor released him to return to work and he had not returned to work in any capacity. He was also continuing to wait for authorization for the left knee surgery recommended by Dr. Silver. Claimant testified he felt a lot of pain in his left knee, especially when ascending a staircase.

¶ 28    On December 28, 2011, the arbitrator issued his decision in the matter. He determined claimant sustained accidental injuries to his right knee that arose out of and in the course of his employment on December 15, 2008. However, relying on Dr. Karlsson's opinions, the arbitrator determined the condition of ill-being in claimant's left knee was not causally related to his work accident. He found claimant entitled to medical expenses "relating solely to the right knee condition." The arbitrator also awarded claimant $107^4/_7$ weeks' TTD benefits, finding claimant was temporarily totally disabled from February 5 to February 11, 2009, and from June 13, 2009, when he first saw Dr. Nam, "through June 28, 2011, or the date Dr. Karlsson found [claimant] had reached MMI with respect to his work[-]related right knee injury." Finally, the arbitrator's decision addressed the employer's due process argument, finding its rights had not been violated or abridged.

¶ 29    Both parties sought review of the arbitrator's decision with the Commission, which issued its decision in the matter on October 18, 2012. The Commission modified the arbitrator's

decision to find the current condition of ill-being in claimant's left knee was causally connected to the work injury he sustained on December 15, 2008, and claimant was entitled to prospective medical expenses in the form of the arthroscopic left knee surgery recommended by Dr. Silver. It found claimant "sustained injuries to both knees" when he fell at work in December 2008. The Commission noted claimant's right knee arthroscopy, which had been recommended by two of claimant's treating physicians, was not authorized "for almost two years from the date of accident" and following "an agreed third opinion by Dr. Bush-Joseph" that "was favorable to [claimant]." It stated it also relied "on the credible record and the opinion of Dr. Silver that [claimant's] left knee injury from December 15, 2008[,] progressed with the overuse of his left leg over several years of right knee impairment, and that he now requires the left knee surgical treatment recommended by Dr. Silver."

¶ 30       As stated, the Commission awarded claimant an additional $17^{3}/_{7}$ weeks' TTD, "representing the time period [of] June 30, 2011 through October 18, 2011, during which time [claimant] remained temporarily totally disabled per Dr. Silver." Further, it stated as follows:

> "While we are in agreement with the decision of the Arbitrator on this issue, we further address [the employer's] constitutional argument. We find no violation [of the employer's] Fourteenth Amendment right to due process. The Arbitrator offered to continue the hearing if [the employer] elected to obtain the depositions of the Drs. Nam and Silver, but [the employer] declined. The treatment records were therefore properly admitted pursuant to Section 16 of the Act [(820 ILCS 305/16 (West 2008))]."

One commissioner issued a concurring opinion, stating as follows:

> "I agree with the majority result; however, I do not agree that [the employer] is required to take depositions of [claimant's] witnesses at its own expense in order to protect its right to cross[-]examine these witnesses on opinions that go beyond treatment. The records should have been admitted only for those purposes permissible under Section 16 of the Act. I, nevertheless, concur in the result because the Commission could reach the same result without reliance on the objectionable opinions in the records of Drs. Silver and Nam."

¶ 31       On June 13, 2013, the circuit court confirmed the Commission's decision. This appeal followed.

¶ 32                              II. ANALYSIS

¶ 33       On appeal, the employer first argues the Commission erred in finding its due process rights had not been violated. It notes the medical records of Dr. Nam and Dr. Silver were admitted into evidence at arbitration and argues those records improperly included the doctors' opinions with respect to claimant's ability to work and causation. The employer contends allowing such medical opinions into evidence, when the doctors rendering the opinions had not first been subject to cross-examination, constituted a due process violation.

¶ 34       "Due process includes the right to present evidence and argument in one's own behalf, a right to cross-examine adverse witnesses, and impartiality in rulings upon the evidence that is offered." *W.B. Olson, Inc. v. Illinois Workers' Compensation Comm'n*, 2012 IL App (1st) 113129WC, ¶ 49, 981 N.E.2d 25. In the context of administrative proceedings, "[d]ue process of law requires that all parties *** have an opportunity to cross-examine witnesses and to offer evidence in rebuttal." *Freeman United Coal Mining Co. v. Industrial Comm'n*, 297 Ill. App. 3d

662, 667, 697 N.E.2d 934, 937 (1998) (citing *Paoletti v. Industrial Comm'n*, 279 Ill. App. 3d 988, 998, 665 N.E.2d 507, 513 (1996)). "[A] party claiming that a due process violation has occurred must establish that it was prejudiced by the alleged violation [citation]." *All American Title Agency, LLC v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 113400, ¶ 36, 994 N.E.2d 636.

¶ 35    Additionally, "[e]xcept when the Act provides otherwise, the Illinois rules of evidence govern proceedings before the Commission or an arbitrator." *National Wrecking Co. v. Industrial Comm'n*, 352 Ill. App. 3d 561, 566, 816 N.E.2d 722, 726 (2004). "Evidentiary rulings made during a workers' compensation proceeding will not be disturbed on review absent an abuse of discretion." *National Wrecking*, 352 Ill. App. 3d at 566, 816 N.E.2d at 726.

¶ 36    To support its position in this case, the employer relies heavily on *Paoletti*, 279 Ill. App. 3d at 999, 665 N.E.2d at 514, wherein this court determined the Commission committed reversible error by refusing to allow the claimant to present rebuttal evidence to a video surveillance tape. Although we agree with the propositions set forth in *Paoletti* regarding due process and the holding in that case, we find neither that case nor the other cases cited by the employer speak to the precise issues presented here. Initially, we note the record shows the employer was permitted to cross-examine the only witness to testify at arbitration–claimant. Neither Dr. Nam nor Dr. Silver was called as a witness at arbitration. Rather, the doctors' medical records were admitted into evidence. The record further reflects the employer had the opportunity to present evidence to rebut claimant's case and the employer does not assert otherwise.

¶ 37    The Commission found the employer's due process rights were not violated and the treatment records of Dr. Nam and Dr. Silver were properly admitted pursuant to section 16 of the Act (820 ILCS 305/16 (West 2008)). We agree. The Act provides:

> "The records, reports, and bills kept by a treating hospital, treating physician, or other treating healthcare provider that renders treatment to the employee as a result of accidental injuries in question, certified to as true and correct by the hospital, physician, or other healthcare provider or by designated agents of the hospital, physician, or other healthcare provider, showing the medical and surgical treatment given an injured employee by such hospital, physician, or other healthcare provider, *shall be admissible without any further proof as evidence of the medical and surgical matters stated therein*, but shall not be conclusive proof of such matters. There shall be a rebuttable presumption that any such records, reports, and bills received in response to Commission subpoena are certified to be true and correct. This paragraph does not restrict, limit, or prevent the admissibility of records, reports, or bills that are otherwise admissible. This provision does not apply to reports prepared by treating providers for use in litigation." (Emphasis added.) 820 ILCS 305/16 (West 2008).

Thus, pursuant to section 16, the records and reports of a claimant's treating physician, which are certified as true and correct, are admissible "as evidence of the medical and surgical matters" contained within the records or reports. 820 ILCS 305/16 (West 2008).

¶ 38    Here, both Dr. Nam and Dr. Silver were claimant's treating physicians. Additionally, on appeal, the employer agrees their records were "subpoenaed and certified pursuant to section 16" of the Act. The employer does assert that "[i]t is undeniable that the doctors' records contain opinions beyond medical and surgical matters admissible pursuant to Section 16." However, it cites no authority for this statement other than section 16 itself. After reviewing

the statutory language, we find no indication that the legislature intended to exclude a treating doctor's opinion, which was offered during the course of the doctor's treatment of the employee and memorialized in the doctor's treating records, from the phrase "medical and surgical matters."

¶ 39    It stands to reason that the records and reports of a treating physician are likely to contain medical opinions relating to a variety of aspects in the care, treatment, and evaluation of the employee. As a result, we are not persuaded by the employer's position that the simple inclusion of medical opinions within a treating physician's records is sufficient to exclude them from admission pursuant to section 16. Further, although the employer criticizes the arbitrator's comment that Commission proceedings should be "simple and summary," we note section 16 of the Act actually contains that explicit phrase. That section provides that "[t]he process and procedure before the Commission shall be as simple and summary as reasonably may be." 820 ILCS 305/16 (West 2008). The provisions of section 16 at issue in this appeal assist in accomplishing that goal by easing the foundational requirements for the admission of a treating physician's records. *Shafer v. Illinois Workers' Compensation Comm'n*, 2011 IL App (4th) 100505WC, ¶ 50, 976 N.E.2d 1 (stating the 2005 amendments to section 16 were meant "to ease the foundational requirements for the admission of medical bills and records").

¶ 40    We note section 16 does not apply to reports prepared by a treating medical provider for use in litigation. 820 ILCS 305/16 (West 2008). In a single sentence in its opening brief, the employer concludes that some of the opinions in the records of Dr. Nam and Dr. Silver were contained within "reports appearing to be prepared in the aid of litigation." However, the employer offers no basis or argument to support its conclusion, nor does it identify or cite to the offending "reports." "The 'failure to properly develop an argument and support it with citation to relevant authority results in forfeiture of that argument.' " *Compass Group v. Illinois Workers' Compensation Comm'n*, 2014 IL App (2d) 121283WC, ¶ 33 (quoting *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37, 992 N.E.2d 103); Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (providing that points not argued in an appellant's brief are waived). We find any arguments by the employer that portions of Dr. Nam's and Dr. Silver's records were prepared in anticipation of litigation have been forfeited due to the employer's failure to present any reasoned argument to support such a position.

¶ 41    Despite the employer's forfeiture, we note Dr. Nam's letter, dated October 5, 2009, and addressed to "To Whom It May Concern," is the most suspect document for having been prepared in anticipation of litigation. In the letter, Dr. Nam provided an opinion that does not appear to have been relevant or necessary to his treatment of claimant as it concerned claimant's inability to work from January to June 2009, a period of time immediately prior to when his own treatment and evaluation of claimant began. However, to the extent the Commission committed error by allowing the letter into evidence, we find no reversible error occurred. The record fails to reflect that either the arbitrator or the Commission relied on this particular opinion of Dr. Nam. In fact, although Dr. Nam opined claimant was unable to work from January to June 2009, and claimant was off work for much of that time, he was not awarded TTD benefits for that time period except for a short period in February 2009, when he was under work restrictions at Concentra and had been laid off by the employer. Thus, as Dr. Nam's opinion in his October 5, 2009, letter was not relied upon by the Commission, the employer did not suffer prejudice and any error was harmless.

¶ 42    Finally, we note that in the context of hearsay objections to medical records the supreme court has held that "under certain circumstances the probability of accuracy and trustworthiness [of a document] may serve as a substitute for cross-examination under oath." *United Electric Coal Co. v. Industrial Comm'n*, 93 Ill. 2d 415, 420, 444 N.E.2d 115, 117 (1982). In *United Electric*, 93 Ill. 2d at 417-18, 444 N.E.2d at 116, the employer objected to two exhibits the employee offered into evidence, each of which contained a physician's audiogram and a letter from the physician to the employee's attorney, containing the physician's opinions as to the nature and cause of the employee's condition. The exhibits were admitted into evidence over the employer's objections. *United Electric*, 93 Ill. 2d at 418, 444 N.E.2d at 116. On review, the employer asserted the exhibits contained hearsay and "should not have been admitted because [the employer] had no opportunity to subject [the physician] to cross-examination concerning the statements contained in the reports and because [the physician's] statements were not made under oath." *United Electric*, 93 Ill. 2d at 420, 444 N.E.2d at 117. In rejecting the employer's contentions, the supreme court stated as follows:

> "The reports and audiograms at issue here were based on examinations performed upon [the employee] by a specialist to whom he had been referred by his family physician for evaluation and treatment. There is no challenge to their authenticity. Moreover, the audiograms were examined by [the employer's] medical witness, whose evaluation of them, to some extent, formed the basis for his opinion concerning the cause of [the employee's] condition. Under the circumstances we believe the information contained in the challenged exhibits was trustworthy and conclude that the arbitrator did not err in admitting the exhibits into evidence." *United Electric*, 93 Ill. 2d at 420-21, 444 N.E.2d at 117-18.

¶ 43    Here, although the employer did not object to claimant's exhibits on hearsay grounds, we nevertheless find *United Electric* instructive. In particular, it stands for the proposition that the probability of accuracy and trustworthiness of an exhibit may substitute for cross-examination under oath. Cross-examination of claimant's doctors in this case was exactly what the employer was seeking. However, like the exhibits in *United Electric*, claimant's exhibits in this case included the records of physicians he saw for evaluation and treatment; the authenticity of the records was not challenged by the employer; and the records were reviewed by the employer's evaluating physician, Dr. Karlsson. The record reflects the employer had a sufficient opportunity to rebut claimant's evidence. Under the circumstances presented, we find the employer failed to show its due process rights were violated and the Commission committed no error in rejecting the employer's due process argument.

¶ 44    On appeal, the employer next argues the Commission erred in finding claimant's left knee condition of ill-being was causally connected to his December 2008 work accident. It argues the evidence overwhelmingly shows claimant injured only his right knee in December 2008. The employer points out claimant initially sought and received treatment for only his right knee and did not begin making left knee complaints until almost two years later in November 2010, and the record contains no medical evidence to support claimant's overuse theory of causation with respect to his left knee.

¶ 45    Initially, the employer contends the Commission's decision, which reversed the arbitrator's finding as to causation and claimant's left knee injury, should be reviewed using an "extra degree of scrutiny." However, this court has previously declined to apply such a standard, even when reviewing the Commission's rejection of the arbitrator's credibility

determinations. *Hosteny v. Illinois Workers' Compensation Comm'n*, 397 Ill. App. 3d 665, 676, 928 N.E.2d 474, 483 (2009); see also *R&D Thiel v. Illinois Workers' Compensation Comm'n*, 398 Ill. App. 3d 858, 866, 923 N.E.2d 870, 877 (2010) (recognizing "the Commission exercises original jurisdiction and is not bound by an arbitrator's findings" and stating a reviewing court determines "whether the Commission's credibility findings that are contrary to those of the arbitrator are against the manifest weight of the evidence"). We similarly decline to apply the extra-degree-of-scrutiny standard in this case.

¶ 46    "Whether a causal connection exists between a claimant's condition of ill-being and [his] work-related accident is a question of fact to be resolved by the Commission, and its resolution of the matter will not be disturbed on review unless it is against the manifest weight of the evidence." *University of Illinois v. Industrial Comm'n*, 365 Ill. App. 3d 906, 913, 851 N.E.2d 72, 79 (2006). "It is the Commission's duty to resolve conflicts in the evidence, particularly medical opinion evidence." *Land & Lakes Co. v. Industrial Comm'n*, 359 Ill. App. 3d 582, 592, 834 N.E.2d 583, 592 (2005). "The test is whether the evidence is sufficient to support the Commission's finding, not whether this court or any other tribunal might reach an opposite conclusion." *Land & Lakes*, 359 Ill. App. 3d at 592, 834 N.E.2d at 592. "For the Commission's decision to be against the manifest weight of the evidence, the record must disclose that an opposite conclusion clearly was the proper result." *Land & Lakes*, 359 Ill. App. 3d at 592, 834 N.E.2d at 592.

¶ 47    Here, as stated, the Commission determined claimant's left knee condition of ill-being was causally connected to his December 2008 work accident. The record supports that decision, showing claimant fell while working on stilts on December 15, 2008, and landed on both of his knees. Prior to that date, he had no history of knee problems. Following his accident, claimant immediately began receiving treatment for his right knee where the pain was most prominent and, ultimately, underwent right knee surgery. He also consistently reported an accident history of falling onto both of his knees and, on February 11, 2009, Dr. Cohen diagnosed claimant with "a contusion to both knees." Claimant testified he experienced pain in both knees following his lay off from the employer in February 2009. In November 2010, after his right knee surgery, claimant's medical records show he began reporting worsening symptoms in his left knee.

¶ 48    Although the record does not support the Commission's statement that Dr. Silver opined claimant's left knee "progressed with overuse of his left leg over several years of right knee impairment," Dr. Silver's records do show he believed claimant's left knee condition was causally related to his December 2008 accident. As the employer points out, its examining physician offered an opposing opinion as to causation. However, conflicts in the medical evidence were for the Commission to resolve. We cannot say an opposite conclusion from that of the Commission was clearly apparent from the record. Its decision as to causation was not against the manifest weight of the evidence.

¶ 49    The employer next challenges the Commission's TTD award. It argues that because claimant's left knee condition was not causally related to his work accident claimant was only entitled to TTD benefits from February 5 to February 10, 2009, and from November 13, 2010, the date of claimant's right knee surgery, to March 24, 2011, when the employer contends claimant's right knee had recovered from surgery and, per Dr. Silver, claimant remained off work due to only his left knee condition of ill-being.

¶ 50    "A claimant is temporarily and totally disabled from the time an injury incapacitates him from work until such time as he is as far recovered or restored as the permanent character of her injury will permit." *Shafer*, 2011 IL App (4th) 100505WC, ¶ 45, 976 N.E.2d 1. "The issues of whether an employee is temporarily totally disabled, as well as the period of such disability, are questions of fact for the Commission, and its decision will not be disturbed on review unless it is against the manifest weight of the evidence." *Kishwaukee Community Hospital v. Industrial Comm'n*, 356 Ill. App. 3d 915, 925, 828 N.E.2d 283, 293 (2005).

¶ 51    Here, the arbitrator awarded claimant $107^4/_7$ weeks' TTD benefits, representing the time periods of (1) February 5, 2009, when claimant was laid off from the employer to February 11, 2009, when he was released by Dr. Cohen to return to full-duty work and (2) June 13, 2009, when Dr. Nam examined claimant and determined him unable to work to June 28, 2011, when claimant was evaluated by Dr. Karlsson and found to have reached MMI. After modifying the arbitrator's decision with respect to causal connection, the Commission awarded claimant an additional $17^3/_7$ weeks' TTD benefits, representing the time period of June 30, 2011, through October 18, 2011, "during which time [claimant] remained temporarily totally disabled per Dr. Silver." The TTD periods awarded by the Commission were supported by the record, which contains the off-work restrictions of claimant's treating physicians. Additionally, the employer's main challenge to the Commission's TTD award is based on its contention that the Commission's causation decision was against the manifest weight of the evidence. As discussed, we disagree with that contention. We find the Commission's TTD award is supported by the record and not against the manifest weight of the evidence.

¶ 52    Finally, the employer argues the Commission's award of medical expenses is against the manifest weight of the evidence. "Whether medical expenses are reasonable and necessary is a question of fact for the Commission, and the Commission's determination will not be overturned unless it is against the manifest weight of the evidence." *Shafer*, 2011 IL App (4th) 100505WC, ¶ 51, 976 N.E.2d 1.

¶ 53    First, the employer again bases its challenge to the Commission's medical expenses award on the same due process and causation arguments already raised and rejected. For the same reasons already stated, its arguments fail. Second, to the extent the employer argues claimant was required to present the testimony of his treating physicians to establish the reasonableness and necessity of his claimed expenses, we disagree.

¶ 54    In *Shafer*, 2011 IL App (4th) 100505WC, ¶ 51, 976 N.E.2d 1, this court rejected a similar argument by an employer. Noting the reasonableness and necessity of medical expenses was a question of fact for the Commission, we pointed out that the claimant's medical records documented her injuries, symptoms, "and the medical procedures that her doctors believed were necessary and appropriate to treat her pain and injuries." *Shafer*, 2011 IL App (4th) 100505WC, ¶ 51, 976 N.E.2d 1. We then stated as follows:

> "The employer presented no evidence suggesting that these treatments were not necessary to cure or relieve the effects of [the] claimant's injury. Nor did it present any evidence showing that these bills were unreasonable in light of what other healthcare providers typically charge for the same services in the relevant geographical area. Thus, we cannot say that the Commission's finding that the medical treatments performed by the claimant's doctors and the prospective medical treatments they recommended were reasonable and necessary was against the manifest weight of the evidence." *Shafer*, 2011 IL App (4th) 100505WC, ¶ 51, 976 N.E.2d 1.

- 13 -

¶ 55    The same rationale set forth in *Shafer* applies here. Claimant's medical records documented his injuries, symptoms, and treatment. The employer presented no evidence showing the treatments claimant received were unnecessary or that amounts billed were unreasonable. As a result, the record contained sufficient evidence to support the Commission's award of medical expenses and its decision was not against the manifest weight of the evidence.

¶ 56                                   III. CONCLUSION

¶ 57    For the reasons stated, we affirm the circuit court's judgment confirming the Commission's decision and remand for further proceedings pursuant to *Thomas*, 78 Ill. 2d 327, 399 N.E.2d 1322.

¶ 58    Affirmed and remanded.